*JAMES M. TOWLES and wife, and another, v. JEFFERSON FISHER.

*Will—Power Thereunder — Husband and Wife —Parol Release—Negligence—Fraud.*

1. A testator devised the land in controversy to A for life, with power to sell the same (with the consent and advice of a majority of the executors named in the will) with remainder over to B of "all the property belonging to my estate which may be in her (A's) possession at the time of her decease;" A and three others were named as executors, A and one of them qualifying. Afterwards A sold the land to C, and executed a deed therefor, without the advice or consent of the other executor who had removed from the State; this deed did not purport to be made by virtue of any power under the will. C entered into possession of the land under A's deed, and has retained it since that time. In an action by B for the land ; *Held,*

    (1.) That by the words, "may be in her possession, &c.," the testator did not intend to give A an unlimited power to sell the land.

    (2.) The deed to C was not in execution of the power given to A by the will, and conveyed only the life estate of A.

    (3.) The fact that her co-executor had removed from the State did not authorize A to sell without his consent.

2. When the donee of a power to sell has an estate of his own in the property affected by the power, and makes a conveyance thereof without reference to the power, the presumption is that he intended to convey only what he might lawfully convey without the power.

3. A husband is not *jure mariti* the agent of his wife competent to estop her by representations concerning her claims to land; *Therefore,* evidence of a statement made by a husband concerning the claim of his wife to certain land is incompetent, it not being proven that he spoke by her authority.

4. A purchaser of land, who has notice of the refusal of a married woman to execute a release of her claims thereto, and who proceeds to improve the land without obtaining such release, is guilty of negligence.

5. The parol relinquishment of a claim to land by a married woman, even for a valuable consideration, is invalid by reason of her disability, and

---

*Reade J. did not sit on the hearing of this case.

she is not thereby estopped from asserting her claim. *Semble,* if she convey her interest by a deed without a privy examination.

6. To estop a married woman from alleging a claim to land, there must be some positive act of fraud, or something done upon which a person dealing with her, or in a matter affecting her rights, might *reasonably* rely, and upon which he did rely and was thereby injured.

CIVIL ACTION to recover Possession of Land tried at January Special Term, 1877, of WAKE Superior Court, before *Schenck, J.*

The case is sufficiently stated by Mr. Justice RODMAN in delivering the opinion of this Court. Upon issues submitted and under the instructions of His Honor there was a verdict for the plaintiffs. Judgment. Appeal by the defendant.

*Messrs. Battle & Mordecai* and *W. N. H. Smith,* for plaintiffs, cited 1 Sugden on Powers, 334, 2 *Ibid,* 138–154; Hill on Trustees, 478–486; Adams Eq. 100; Bat. Rev. ch. 45, § 116, not applicable to cases where executor has merely left the State.

*Mr. D. G. Fowle,* for defendant.

RODMAN, J. This action is to recover a piece of land in Raleigh in the shape of a parallelogram, three feet wide on Fayetteville Street and of like width on Wilmington Street, the other sides being parallel. It is admitted that as to James Callum, one of the two parties plaintiff, the action is barred by the statute of limitations, so that it is in effect an action to recover an undivided half of the parallelogram.

The plaintiffs claim under the will of William Shaw who died in 1827. By the sixth clause of that will he devises the land in controversy to his wife Priscilla for life ; and by the seventh clause, he devises to James Callum and Mary Callum, (now Mrs. Towles) the plaintiffs in this action "on the death of my wife Priscilla, all the property real and personal belonging to my estate *which may be in her possession*

at the time of her decease, to be equally divided between them," &c. In the same clause are found these words; "When I said above that my wife Priscilla should have, hold, and use the property to her bequeathed during her life time for her own comfort and convenience, it was not intended to preclude her from making donations to charitable or religious objects as she may think proper." The testator appoints Joseph Gales, his wife Priscilla, and two others his executors. Gales and the widow alone qualified.

By a codicil, he devised that his wife with the consent and advice of his executors or a majority of them, should have power to sell and dispose of any part of the land left to her for life, whenever it should appear to her and them that such sale was proper and for her convenience and for the general interest of his estate, and that his wife and any two of his executors might make the deed.

In June, 1833, Priscilla, the widow, for a valuable consideration, conveyed to Primrose in fee the land in question. The deed does not profess to be made by virtue of any power in her under the will. Upon these facts the plaintiff, Mrs. Towles, contends that upon the death of Priscilla in 1847, she and James Callum were entitled to the possession of the land in question. The defendant denies this and contends:

1. That as the land was not in the possession of Priscilla at her death by the terms of the will, it did not pass to the devisees in remainder. We do not think that by the use of these words "which may be in her possession" the testator intended to give his widow an unlimited power to sell his land, which would be the result of the construction contended for. Such a power is inconsistent with the very limited power given to her to make donations for religious and charitable objects, by which he probably meant nothing more than such moderate and reasonable donations of money as he had been in the habit of making; and it is especially in-

consistent with the power given to her by the codicil to sell any part of the land with the consent of the executors.

2. We think it clear that the deed to Primrose was not in execution of the power given to the widow by the codicil. It may be and probably is true, that the sale was proper for her convenience and for the general interest of the estate. But that is immaterial. The consent of a majority of the executors or at least of those who qualified, was a condition precedent to the exercise of the power, and that consent did not exist. It was a condition which the testator had a right to prescribe. That Gales, who with the widow alone qualified as executors, had removed from the State, did not authorize her to sell without his consent. And no Court can *now* substitute its judgment on the propriety of the sale, for the consent which the testator required to precede or accompany the sale.

In addition to this, when the donee of a power to sell has an estate of her own in the property affected by the power, and makes a conveyance of the property without reference to the power, the construction established by the decisions, is, that she intends to convey only what she might rightfully convey without the power. These doctrines are so generally accepted that we think no reference to the authorities is necessary. They may be found cited in the brief of the counsel for the plaintiff. The deed to Primrose conveyed only the life estate of Priscilla Shaw.

3. The defendant also contends that the plaintiff, Mrs. Towles, (for it is agreed by the parties that the estate of her husband need not be considered) is estopped by her acts *in pais* from asserting a claim to the land in question.

On this part of the case we have had considerable doubt. As to what acts *in pais* will estop a *feme covert* from alleging a title to land, it is difficult to state any general rule which will not be too general to be useful; and it is even more

difficult to apply the general rule to the facts of the partic-
ular case. The undisputed facts seem to be these :

Mrs. Towles' estate accrued in possession at the death of
Mrs. Shaw in 1847. What was done on the premises by
Primrose prior to that time, was done under his estate for
the life of Mrs. Shaw. It is not contended that any act or
omission of Mrs. Towles before that time is of any signifi-
cance.

From 1847 to 1874, the land remained in the possession
of Primrose and his heirs. On the 30th of April, 1874, it
with some adjoining land was sold by the heirs of Primrose
at public sale, and bought by Fisher. Up to, at or about
the time of this sale, the case was simply that of an adverse
possession submitted to by Mrs. Towles, and it does not alter
the effect of such possession whether she knew of her rights
to the land so possessed or not. She was during all that
time under a disability which still continues, and the stat-
ute of limitations did not run against her. It is in evidence
that she did not know of the sale by Primrose until after it
was made. At all events it is not alleged that she was
present at the sale, and knowing that the land now in ques-
tion was being sold, and knowing of her title or claim
thereto, wilfully concealed the same.

In August, 1874, after Fisher had paid $5,000 on the price
of the land bought by him of Primrose, which included this
land, he was first informed of the claim of Mrs. Towles to
it. The heirs of Primrose procured a release of the land in
question, to be drawn for execution by Towles and wife,
which on the 1st of September, 1874, was shown to Towles,
and on the next day it was returned to W. S. Primrose, one
of the heirs, unexecuted. The defendant then offered to
prove that Towles, on returning the deed, said, that his wife
refused to sign it because it embraced half the wall on Wil-
mington Street, that she claimed the whole wall, but nothing
beyond it. The Judge excluded this evidence. We think

it was properly excluded, if for no other reason, because it was not offered to be proven that in fact Mrs. Towles had authorized her husband to deliver such a message, and a husband is not *jure mariti* the agent of his wife competent to estop her by representations concerning her claims to land. For the same reason the evidence of Fisher as to his conversation with Towles concerning his wife's claims was properly excluded. If he relied on them, as probably he did, he was guilty of negligence. We must assume that he knew that Mrs. Towles had refused to execute the release which Primrose had tendered to her, and that she claimed the whole parallelogram now in question. If he supposed that her refusal to sign the release was only because it included one-half of the wall on Wilmington Street, and he was willing to forego any title to that, common prudence demanded that he should procure her release for the rest of the parallelogram. It was negligence to proceed without it. If Mrs. Towles had personally told Fisher what it was offered to be proved that her husband told him as coming from her, it would have informed him of her claim and of her refusal to release it. And if she had assigned a reason for her refusal which reached only a small part of the land claimed, but did not offer to execute a release which would have avoided her objection, it ought to have put him on his guard. At all events he cannot reasonably be supposed to have acted on the belief, that Mrs. Towles informally and by a mere declaration, released a claim which he knew that she refused to release by a binding instrument. That she assigned a partial or insufficient or even a false reason for her refusal, did not annul the refusal as to the part that did not come within the reason ; and she cannot fairly be considered as having done the greater part of what she was requested and refused to do, because the reason which she assigned for her refusal applied only to a small part of it. Besides, if Mrs. Towles had then and there said to Fisher, I

claim title to this parallelogram of land, but I promise to convey it to you, and I will never set up my claim to it against you ; is it not clear that by reason of her disability she would not have been estopped by such promise ? Supposing that there had been a consideration for her promise, which in this case there was not, it would be the case of a purchaser from a woman whom the purchaser knows is married, but who contents himself with a deed to which she is not privily examined, or with a mere parol conveyance. All the cases say that she is not estopped by such a conveyance.

We have examined with care many of the cases cited in Bigelow on Estoppel, 485, 492, and they all concur that a married woman who is under a disability to contract, cannot be estopped by any thing in the nature of a contract. To estop a married woman from alleging a claim to land there must be some positive act of fraud or something done upon which a person dealing with her, or in a matter affecting her rights, might *reasonably* rely, and upon which he did rely and was thereby injured. No one can reasonably rely upon the contract of a married woman or on a representation of her intentions which at best is in the nature of a contract, and by which he must be presumed to know that she is not legally bound.

In January, 1875, Fisher completed his purchase from Primrose by paying the residue of the purchase money and taking a deed which included the land in question. He says he held the land without objection from Mrs. Towles from that time until August or September, 1875, when he began to build and had made considerable progress in building, when he was notified of plaintiffs' claim to the land in question. But it has been seen that he was informed of Mrs. Towles' claim in or about August, 1874. Probably he means only to say that he was formally notified of the claim in August or September, 1875, and not that he was then first informed of the claim of Mrs. Towles.

No doubt the defendant supposed that he had a good title to the premises and was therein mistaken.   But that he was deceived by any thing that can in law be called a tort or fraud on the part of Mrs. Towles, even supposing that she had personally said to him what he offered to prove that her husband said as coming from her, we see in the case no evidence to establish.   Having notice of Mrs. Towles' claim to the title in August, 1874, and knowing that she had not released it in the only way in which she could by law do so, it was his neligence to proceed as if it had been released.   In reversing the judgment as we are bound to do, and remanding the case, it may be remarked that we have not been called on to consider and have not considered any claims or equities of the defendant arising out of the increase in value of the land by reason of his improvements.   Any questions of that sort can be presented by an amendment of the pleadings in the Superior Court.   This opinion and judgment applies to both the appeals in the case.

Judgment reversed.   The case is remanded to be proceeded in according to this opinion.

Let this be certified.

Per Curiam.                                 Judgment reversed.