ADELINE HODGE v. JOS. POWELL et al.

*Dower—Married Woman—Privy Examination—Estoppel.*

1. A married woman cannot be estopped by anything in the nature of contract, but where it would amount to a fraud to allow her to repudiate her acts, she is estopped.
2. Where a husband and wife joined in a bond to convey a tract of land to the defendant, but the wife was not privily examined, and after the death of the husband she received payment for the land and invested the money in other land; *It was held*, that she was estopped from taking advantage of the want of a privy examination, and therefore was not entitled to dower in the land sold by her husband.
3. *It seems*, that when a *feme covert* has the consideration in her hands for a contract which she disaffirms, on account of her coverture, the disappointed party may recover it, and when she has converted such consideration into other property, he may follow it and subject it to the satisfaction of his demand by a proceeding *in rem*.

(*Burns* v. *McGregor*, 90 N. C., 222; *Towles* v. *Fisher*, 77 N. C., 443; *Boyd* v. *Turpin*, 94 N. C., 137; cited and approved. *Scott* v. *Battle*, 85 N. C., 184; *Clayton* v. *Rose*, 87 N. C., 106; distinguished and approved).

This was a PETITION FOR DOWER, tried before *Avery, Judge,* at Spring Term, 1886, of RUTHERFORD Superior Court, the cause having been transferred to the Civil Issue Docket of the said Court, to be tried in Term time, upon issues of law and fact, raised in the pleadings.

The only controversy in this Court, is in reference to the tract of land claimed by the defendant Twitty, and both the

petitioner and defendant Twitty admit title in Hawkins, prior to September 1st, 1879.

The petitioner alleges:

" 1. That she was married to one Crowder Hawkins in the year 1863 and lived and cohabited with him until his death, in 1880.

2. That said Crowder Hawkins, during the coverture of the petitioner, was seized and possessed in fee simple of two tracts of land lying in said county, bounded and described as follows:        *        *        *       .*        *        *        *        *

3. That said Hawkins, during the coverture,' as the petitioner is informed and believes, sold and conveyed by deed, about fifty acres of the first above mentioned tract to the defendant Lynch Twitty, without the assent of the petitioner or her joining in said conveyance, and without the petitioner having received any consideration whatever for her dower interest in said fifty acres, and that said Lynch Twitty is now in possession of the same.

6. That said Hawkins owned no other real estate, to plaintiff's knowledge, at time of his death. The petition prays judgment for dower in said land."

The defendant Twitty answers and says:

" 1. That it is true plaintiff was married to Crowder Hawkins in 1863.

2. The allegations in second paragraph of complaint are admitted.

3. In answer to allegations in paragraph three of complaint, defendant says that defendant Lynch Twitty purchased the land described in said paragraph from said Hawkins, on September 1st, 1879, and that plaintiff signed the papers, but her privy examination was not taken. That no deed was made, but only a bond for title given to defendant Lynch Twitty, which bond was signed by plaintiff, and notes for the purchase money were given by said defendant to Crowder Hawkins. That some time after this transaction,

Crowder Hawkins and the plaintiff, his wife, separated by mutual consent, and lived apart, and that by mutual agreement between them, the unpaid notes were turned over to plaintiff, and after the death of Crowder Hawkins the defendant paid the notes, amounting to $100 and interest, to the plaintiff, and that plaintiff during her widowhood ratified by her words and acts, the contract of sale which she had previously signed. That all the purchase money has been paid.

6. Defendants do not know nor have they sufficient information on which to ground a belief as to the truth of the allegations in paragraph six of the complaint."

Hawkins intermarried with the plaintiff Adeline in the year 1863, and died in July, 1880, and in August, 1880, the plaintiff married Joseph Hodges.

The defendant offered in evidence a bond for title, executed by Hawkins and wife, Adeline, to the defendant Twitty, but the privy examination of the wife was not taken. The bond for title was for the land in controversy.

The defendant Lynch Twitty, in his own behalf, testified in substance, that he bought the land of Hawkins and took a bond for title; that subsequently Hawkins and his wife separated, and the notes for the purchase money described in the bond for title, were left by Hawkins in the hands of one Mooney for the plaintiff, and after the death of Hawkins, she got possession of them, and the witness paid the first note for $50, with interest, to the plaintiff in gold, after the death of her first husband, and before she married Hodges; that he paid the second note six months later to plaintiff's husband, Hodges. under her direction; that he paid the third note in her presence, and with her consent, to the said Hodges. Witness also testified, that he had improved the land and added fifteen or twenty dollars to its value.

John Washborne testified, that he went with the defendant Twitty to the plaintiff to witness the payment of the notes.

The first time she said she expected to claim an interest in the land, and did not want the money.    Twitty did not pay it then.

The second time Twitty asked her if it was right to pay it to Joseph Hodges, her husband, who had offered to receive it, and she said, "yes, pay it to him."

A. J. Scoggins testified, that he was summoned to help lay off the plaintiff's year's allowance after the death of Hawkins, and that she claimed the three fifty dollar notes in her own right;    *    *    *    claimed that they were given to her when she and Hawkins separated.    The notes were not included as a part of her year's allowance.

Joseph Hodges, husband of the plaintiff, testified for her, that the first note was paid by defendant. Twitty about the last of November, 1880, to the witness.    That he paid the second note to the witness a month later, when plaintiff was not present; that he paid the third note to witness in the presence of his wife; that the defendant was told when he paid the first note, that she would not sign the deed.

On cross-examination he testified, that plaintiff signed the bond for title; that witness did not refuse to take the money; that he took it with his wife's consent, and paid it as a part of the purchase money for the tract of land on which he and his wife now live, and that plaintiff had taken title to said land in her own name, and that he (witness) paid the money received on all three of the notes as purchase money for the same.

The jury upon issues submitted, found: That the defendant paid the note first due to Joseph Hodges, with the consent of his wife, after their marriage; that he paid the second note to Joseph Hodges, with the consent of the plaintiff, after their marriage; that he paid the third note to Joseph Hodges, after the marriage, by plaintiff's direction and in her presence; that the value of the permanent improvements put upon the land by the defendant was $20 ; that the whole amount of

money paid by the defendant to Joseph Hodges, or his wife, was applied to the payment of the purchase money for a tract of land on which said Hodges and wife now live, and for which said Hodges holds title in himself.

Upon this verdict, the Court refused to give judgment for a writ of dower in favor of the plaintiff, until she shall have repaid the amount paid by the defendant as purchase money, as found by the jury, and so adjudged and decided.

From this the plaintiff appealed.

*Mr. John F. Hoke,* for the plaintiff.
No counsel for the defendants.

DAVIS, J., (after stating the facts).   The law favors dower, and is careful to protect the rights of married women and widows.

We take it to be well settled that a married woman, being under disabilities to contract, cannot be estopped by anything in the nature of a contract, but where she does anything in a matter affecting her rights, upon which a person dealing with her might reasonably rely, and upon which he did rely, she cannot protect herself by the disability of coverture, and claim all the benefits of the transaction, and repudiate all that is against her, while withholding and enjoying the fruits and benefits of her misguiding and repudiated act.   It would be to make her coverture a safe retreat and safe protection for fraud.

The plaintiff joined her then husband, Hawkins, in the execution of the bond to the defendant for title to the land, to be made upon the payment of the purchase money, but her privy examination was not taken, and she was not estopped from claiming dower.   The defendant executed to the husband notes for the purchase money.   These notes were delivered to the wife and claimed by her after the death of the husband as her property.   The defendant was not

obliged to pay them unless he could get a good title to the land. He was in possession of the land, and she held the notes. It is manifest from the evidence, that he would not have paid the notes to her, or to any one by her direction or with her consent, if he had supposed that she would thereafter set up any claim to the land, and we are at a loss to see how, consistent with any idea of right, she could have received the money, if, at the same time, she intended to claim the land. It appears that the money was paid by her consent, and some of it by her direction, to Joseph Hodges, her present husband, and the whole of it was invested in the purchase of the home and land on which she and her husband now reside, and the title to which, according to the evidence of the husband, (the only evidence upon that point to be found in the record), is in her, though from the verdict it appears to be in the husband. Can she, while enjoying the benefits of a home, paid for by the money of the defendant, be heard to say, because she was a married woman when she joined her now deceased husband in the obligation to make title : " I will hold my interest in my deceased husband's land, because a beneficent law says I am not bound by any obligation entered into under coverture, and I will enjoy, with my living husband, the home and land purchased with money derived from my repudiated act, because, though not bound myself, the same beneficent law says it was the defendant's folly to deal with me ?" This the law will not tolerate. *Burns* v. *McGregor*, 90 N. C., 222, and cases there cited; *Towles* v. *Fisher*, 77 N. C., 443 ; *Boyd* v. *Turpin*, 94 N. C., 137.

An infant is not bound by his contract, but if he makes a contract and disaffirms it, he cannot retain any property acquired by virtue of the contract, and the same principle applies to a married woman. The counsel for the plaintiff relies on *Scott* v. *Battle*, 85 N. C., 184. That case is unlike this. There the married woman had executed a deed by herself alone, and it was the *folly* of the purchaser to take

such a deed, but in that case, RUFFIN, J., said, "if a *feme covert* should retain and have actually in hand, the money paid her as the consideration for her imperfect and disaffirmed contract, her vendee would be permitted to recover the same at law, or *if she had converted it into other property so as to be traceable,* he might pursue it in its new shape, by a proceeding *in rem, and subject it to the satisfaction of his demand."*

That is just the case here. The plaintiff has her election. If the obligation is repudiated and disaffirmed, she cannot retain the consideration without compensating the defendant for his damages.

We.are also referred by counsel to *Clayton* v. *Rose,* 87 N. C., 106. An examination will show that it is unlike this. In that case the act and the silence of the wife, constituted no estoppel. She was under the presumed marital influence of her husband, and there was no consideration, benefit or advantage accruing from the transaction to her.

The form of the judgment is objected to here. This is not assigned as error in the record, and it does not appear from the record that this objection was made when the judgment was rendered, or that the attention of the Judge was called to it in the Court below.

If the plaintiff shall elect to claim dower, the defendant will have a right to such damages as he may sustain thereby, and the judgment can be modified and such order made in regard to the money, as will secure and protect the rights of the parties.

There is no error. Let this opinion be certified to the end that further action may be had in conformity therewith.

No error.                                    Affirmed.