MILLSAPS v. ESTES.

(Filed March 29, 1904).

1. INFANTS—*Arbitration and Award—Minors—Judgments.*

   The submission to arbitration of the cause of an infant by himself, his next friend or his attorney is void and a judgment founded thereon is void.

2. ESTATES—*Life-estates—Wills—The Code, sec. 1325.*

   A will giving to a devisee certain real estate to be and inure to the use of the devisee "during his natural life, not subject to be sold and conveyed by him, but in case he should have legitimate children it is to belong to them," gives to the devisee only a life-estate therein.

ACTION by Orphia Millsaps and others against G. D. Estes, heard by *Judge W. A. Hoke* and a jury, at July Term, 1903, of the Superior Court of SWAIN County.

From a judgment for the defendants the plaintiffs appealed.

*Shepherd & Shepherd* and *F. C. Fisher,* for the plaintiffs.
*A. M. Fry,* for the defendants.

MONTGOMERY, J.   This action was brought by the plaintiff against the defendant to recover possession of a certain tract of land situated in Swain County, and also to have annulled a certain decree and judgment in an action between the plaintiff and certain of the defendants, made at Spring Term, 1892, of Swain Superior Court, on the ground that the decree was procured through fraud on the part of the defendants and because of its invalidity, appearing on its face.   The defendants admit in their answer that they hold the land under and by virtue of the decree above mentioned,

but they deny that the same was procured through their fraudulent conduct, and insist that the decree is regular in form, valid and binding in law. In order that a clear understanding may be had of this controversy it is necessary to set out the particulars of the decree, the main point of contention in the case, and also the nature of the action in which it was rendered.

In 1872 John A. Millsaps died leaving a last will and testament in which he devised the land described in the complaint to his brother William Millsaps, the father of the plaintiff. The language of that part of the will is as follows:

"I will and bequeath to William Millsaps, my half-brother, all that part of real estate in the following boundary, to-wit, * * * to be and inure to use of said William Millsaps during his natural life, not subject to be sold and conveyed by him, but in case he should have legitimate children it is to belong to them in like manner as the other devises above named."

The devisee, William Millsaps, sold and conveyed the land in fee-simple to certain of the defendants (the other defendants claiming title to parts of it by deeds from original purchasers from William Millsaps), and delivered possession of the same to the purchasers. Afterwards, and before the death of their father, the plaintiffs, all being infants (and five of whom were infants at the commencement of the present action), commenced an action in Swain Superior Court in October, 1888, for the purpose of having the deeds aforesaid, which had been executed by their father, cancelled, and the life-estate of their father in the land be declared forfeited because of waste which had been committed on the same by those who had purchased from him, and for damages on account of such waste.

In the action commenced in 1888 the plaintiffs in their first allegation in the complaint declared that they were in-

fants under the age of twenty-one years and that they brought
the action in the name of their next friend, Joseph Shuler.
The defendants in their answer denied that allegation.   In
the second allegation of the complaint the death of John A.
Millsaps was set out, and the item of the will which we have
quoted above was declared and the defendants admitted the
same.   In the third allegation of the complaint it was alleged
that the devisee, William Millsaps, went into possession of
the land, and that was admitted by the defendants in their
answer.   In the fourth allegation of the complaint it was
declared that the plaintiffs were the children of William
Millsaps, born in lawful wedlock, and owners in fee of the
land.   The whole of that allegation was denied by the de-
fendants.   The fifth allegation of the complaint was in these
words: "That after the said William Millsaps entered into
possession and took charge of said land regardless of the
rights of the plaintiffs, he made some kind of conveyances
to the defendants in this action, purporting to convey to them
the land in fee; that the defendants took said conveyances
for said land with full knowledge of the rights of the plain-
tiffs, and for a consideration, and with full notice of
the fact that the said William Millsaps had only a life-estate
in said land."   The defendants denied the whole of that
allegation, although they afterwards on the trial showed
those deeds as evidence of ownership of the land.   In the
sixth allegation the waste and destruction of timber and soil
are alleged, and the same is denied.

We have already said that the judgment demanded in that
action was that the deeds and conveyances made by William
Millsaps, the father of the plaintiffs, to the defendants be
cancelled; that the life-estate of William Millsaps be for-
feited, and for damages for the waste committed on the
premises.   The complaint and answer in that action were
filed at Spring Term, 1888, but no progress seems to have

been made until Fall Term, 1891, when an order in the following words was made:

"By consent of all parties this case is referred to S. R. Gibson and A. H. Hayes, as arbitrators, with power to choose an umpire in case they cannot agree, to go upon the premises of the land in controversy in the action and value the land claimed by each of the defendants, and make report of the said values so ascertained by them to the next term of this Court; and also ascertain and report the amount of money which has been heretofore paid to W. R. Millsaps by each of the said defendants or those under whom they claim, which shall be embraced in said report as a part of their award; and it is ordered upon the coming in of said report or award, if there shall be a balance found due the plaintiffs upon said land over and above what shall have been found by said arbitrators to have been paid to said W. R. Millsaps, a judgment of this Court shall be entered for said balance against each of said defendants for such amounts as shall then be ascertained to be due from them, and retained for further orders."

That judgment or order was signed by one of the numerous counsel on each side. Under it, the arbitrators acted and made report to the Court. In that report they set forth that there had been paid by the several purchasers, defendants and those who claim under them, to W. R. Millsaps and wife the sum of $1,194.60; that the land was worth at a fair cash valuation $1,550, "leaving a balance due the plaintiffs of $355.40, to be paid by the defendants as follows: We consider that Franks has paid full value of the land held by those claiming under said Franks; we consider that G. D. Estes should pay $255, and W. R. Randall should pay $45.40, and John Long should pay $55, making a total of $355.40."

At Spring Term, 1892, that award was made a judgment

of the Court. In the judgment it was decreed that the deeds for that part of the land bought by Franks be declared valid, passing all the interest of all the heirs at law of W. R. Millsaps in the land described. It was further adjudged that title be made by the Clerk of the Superior Court, as commissioner, to G. D. Estes, John Long and W. R. Randall, separately, when they shall have paid the amounts found to be due by them into the office of the Clerk of the Superior Court, and that the Clerk's deed shall pass all the interest of the said parties and all the interest of all the heirs at law of the said W. R. Millsaps."

Upon the trial of the present action his Honor submitted the issues in the following words to the jury:

1. Are the proceedings and decree in the Superior Court of Swain County, declaring titles to land now claimed by the plaintiffs to be in the defendants on payment of certain sums of money, and have the terms of said decree been complied with by the defendants and money paid according to the terms of said decree?

2. Was money so paid taken and received by the plaintiffs in former actions, and who are now plaintiffs in the present action?

3. Was such proceeding regular in form?

4. Were such proceedings and decree instigated and procured by fraud?

5. Were said proceedings and decree within the scope and purpose of the suit and within the power and jurisdiction of the Court?

6. Are said proceedings and judgment a valid estoppel of record against the plaintiffs, barring the plaintiffs from maintaining the present action against the defendant?

7. Did the defendants or either of them buy for full value and take their titles for land held by them without

notice or knowledge of any charge of fraud or claim of invalidity of said decree?

8. Are the plaintiffs owners of the land sued for and described in the complaint?

9. Are the defendants in wrongful possession of said land?

10. What damages are the plaintiffs entitled to recover?

His Honor instructed the jury that if they believed the evidence they would answer the first two issues "Yes," the fourth "No," the fifth "Yes," the sixth "Yes," the seventh "Yes," the eighth and ninth "No," and the tenth "Nothing."

The whole record of the action commenced in 1888 was introduced as evidence in the present action, and it appeared that Estes, Long and Randall paid into the Clerk's office the amounts found to be due by them, respectively, by the arbitrators; and that the Clerk of the Court as commissioner made deeds to them according to the judgment and award. There was also undisputed evidence that the Clerk disposed of that fund, the total being $389.95, as follows: To the attorneys of the plaintiffs $178.12 and to the guardian of the plaintiffs $193.13.

It is not necessary for us to discuss whether or not his Honor should have submitted certain of the evidence in this case on the issue of fraud in the matter of the procuring of the order of arbitration and the proceedings under the same. It is enough for us to say that the order or judgment of the Court in the action of 1888, referring the case to arbitrators, and the judgment which followed on the report of the arbitrators, were *coram non judice,* and on that account totally void. The infants in this action were the real parties to the suit, and not Shuler who appeared as their next friend; and an infant cannot give his consent to a submission of his cause to arbitration, and any attempt to do so for him is absolutely void. *Rudston v. Yates,* March 11, 11+1, 1 Rolle

Abr. Arb., A., 268; *Britton v. Williams,* 3 Munf. (Va.), 453; *Tucker v. Dabbs,* 12 Heiskell, 18; *Jones v. Payne,* 41 Ga., 23. There can be cases found in which it is held that an attorney can submit his client's cause, *pendente lite,* without the consent of his client, but it will be found on examination that the clients are of full age, as in the case of *Morris v. Grier,* 76 N. C., 410. We have found no case in our researches where an infant's cause of action has been submitted to arbitration.

We have said that this order of arbitration and the judgment founded upon it were not voidable but were void; and it follows therefore that all that was done under them, and all titles to any part of the plaintiff's land procured by any person through them, are invalid and of no force; and his Honor was in error in instructing the jury to answer the third, fifth, sixth and seventh issues "Yes." And he was also wrong in instructing the jury to answer the eighth and ninth issues "No," and the tenth issue "Nothing."

Such of the plaintiff's special prayers for instruction as were of like effect with the opinion we have expressed ought to have been granted. It was argued before this Court by the counsel of the defendants appellee that, outside of the award and judgment upon the award, the defendants' deeds from W. R. Millsaps were valid and passed the title to the land to the defendants, because the language of that item of the will of John A. Millsaps, in which the land described in the complaint was devised, constituted William Millsaps tenant in tail, and under our statute (The Code, section 1325) estates in tail are converted into fee-simple estates. We can see no likeness between the estate created in William Millsaps by the will of his brother to that of an estate in tail under the statute *de donis.* In estates tail, the tenements were given to a man and the heirs of his body, for instance, and not to a man for his natural life and then to

the heirs of his body or to his children. And the incidents of an estate in tail were that the tenant in tail could commit waste without being called to account for the same; that the wife of the tenant in tail could have her dower in the estate tail; that the husband of the female tenant in tail might be tenant by the curtesy of the estate tail. In our case, the language of the will is that the property is to be and inure to the use of the said William Millsaps during his natural life, not subject to be sold and conveyed by him. His estate under the will is but a life-estate and has none of the incidents of an estate in tail.

Error.