This case was before us at Spring Term, 1904, when we ordered a new trial. It is reported 134 N.C. 486, where the facts are fully stated byJustice Montgomery. We are now asked to rehear the case, and to review and reverse the decision we then made. A brief recital of the leading facts will make plain our reason for not doing so. The plaintiffs brought a suit in 1888 against Estes and others and alleged in their complaint that their grandfather, John A. Millsaps, had devised to their father, W. R. Millsaps, the land in controversy for and during his natural life, with a restriction annexed to the gift that he should not sell and convey the same, and at his death to his legitimate children, the plaintiffs; and that their father sold and conveyed the land to the defendants in this suit, who entered while the life estate was still subsisting, and committed waste upon the land. Their prayer *Page 394 
was for a forfeiture of the life estate and for damages for the waste committed and for a cancellation of the deeds made by the life tenant. The material allegations were denied by the defendants.
Plaintiffs were all infants at the time the suit was commenced and when the judgment therein was rendered, and there was no (537) appointment of a next friend, upon written application and order, as required by the rule of the Court, to prosecute the suit in their behalf — Clark's Code (3 Ed.), p. 958 — though the name of John Shuler was inserted in the summons by the clerk as such next friend. The evidence does not tend to show that he took any interest in the subsequent proceedings or any care of the interests of the infants. So far as appears, the latter had no actual knowledge of the institution of the action or of the proceedings therein. The evidence tends to show that the action was commenced at the instance of their father, whose conduct and relation to the cause indicates that he was unfriendly to their interests and was attempting by the suit to cure the defective title he had conveyed to the defendants.
The counsel of record consented to an arbitration, the submission requiring the arbitrators not to ascertain and determine what were the real rights of the plaintiffs, but simply to report the value of the land and how much had been paid to William Millsaps by those who purchased from him. It was further provided that the judgment should be entered for the difference between the value of the land and the sums so paid, or "for the balance thus found due to the plaintiffs." The arbitrators reported the value to be $1,550, the amount paid $1,194,60, leaving a balance due $355.40, to be paid as follows: G. D. Estes $225, W. R. Randall $45.40, and John Long $55. The other purchasers, J. A. and Mary M. Franks, were found to have paid their share in full, and no sum was reported as due by them. In accordance with the submission by consent of counsel, it was afterwards adjudged by the court that the award be approved and made a rule of court, and that the defendants respectively pay to the plaintiffs the several amounts thus found due by the report of the arbitrators; and the clerk, as commissioner, was appointed to make title to the purchasers upon payment of the sums so due. The several amounts were afterwards paid and title (538) made by the commissioner accordingly. It further appears in the case that of the balance reported as due namely, $355.40, the infants by their guardian received in round numbers one-half thereof, so that they have realized from their land, which is worth $1,550, the small sum of $175.
This action is brought to set aside that judgment and the award for the reasons stated in the former opinion, some of which were that the attorneys had no power or authority to consent to any such arbitration, *Page 395 
and the court had no power to enter a judgment by consent thereon, and further, that an arbitration by infants, or their next friend or attorneys even if properly appointed, is voidable if not void.
At the former hearing, this Court held that the arbitration and proceedings based thereon were void and could not be set up as an estoppel or as res judicata so as to conclude the infants. Counsel for the petitioners now argue that this was error, as the submission, the arbitration and the award, at most, were only voidable, and that the infants cannot avail themselves of the defect and disown the act of the attorneys and disaffirm the award, because a judgment of the court has supervened, and as some at least of the defendants purchased for value upon the faith of that judgment, without notice of any illegality, they are protected under the general principle applicable to persons who buy at judicial sales and who are strangers to the suit in which the sale was ordered.
We find that the authorities are not agreed as to whether an infant's submission to arbitration is void or merely voidable. Some courts, which are entitled to the greatest respect, have held that it is utterly void, while others of equal authority have held that it is only voidable. In this conflict of opinion, we are inclined to concur with those courts and the text-writers who maintain the proposition that such submissions are voidable merely, as we are unable to see why the case should be taken out of the general rule as to the contracts of infants, a submission being in itself a contract, or so far partaking of its (539) nature as to be substantially within the principle applicable to contracts. A submission to arbitration may be defined as the agreement by which parties refer disputed or doubtful matters pending between them to the final decision and award of another party, whether one person or more; the party to whom the reference is made is called an arbitrator; the arbitration is the investigation and determination of the matters of difference between the contending parties by the arbitrator so chosen, and the award is the decree or judgment of the arbitrator, and is generally conclusive in its effect. 2 A. E. (2 Ed.), 539; Morse on Arbitration, 36. The basis of the arbitration and award is the submission. Watson, in his book on Arbitration, 59 Law Lib. (1848), p. 55, thus states the law upon the question now presented: "Every person capable of making a disposition, or a release of his right, may make a submission of that right to arbitration, and consequently will be bound by an award made in pursuance thereof. But persons who cannot bind themselves by contract, cannot submit to arbitration, as infants, femes covert, persons compelled by threats and imprisonment, persons professed in religion. It is quite clear that a submission by an infant is either void or voidable; and unless he ratifies when he attains his age, he is not bound by his submission to perform an award. In Rolle's *Page 396 
Abridgment it is laid down generally that an infant is not bound by his submission of a trespass committed either on his person or on his land. In another place, in the same book, it is said that such submission is only voidable. And this seems to be the only doubtful question respecting the submission, as far as regards the infant himself; for in some cases it has been held that a submission by an infant is entirely void; in others that it is only voidable. In a modern case, where a cause was referred by parol agreement, in which an infant (by his prochein(540) amie) was plaintiff, it was held to be quite clear that the infant was not bound by the award, but, the court directed that he should have notice of the award, and, if he would not perform it, that the defendant should be at liberty to carry down the record to trial, by proviso," being one brought on by the defendant on notice to the plaintiff and taking its name from the words of the writ to the sheriff which required him to execute only one of the writs (or notices) of trial. 3 Blk., 357. So that it appears the arbitration was altogether ignored, and the defendant was left at liberty to proceed as if plaintiff had failed to bring down the record to the assizes. He also refers to a case in which the Court of King's Bench (by Abbott, C. J.), reversing the Court of Common Peas, held that where infant plaintiffs appeared by next friend, their attorney or solicitor had no authority to consent for them or their next friend to a submission, and consequently that they were not bound by the award. Biddell v. Dowse, 13, E. C. L. (6 B. and C.), 164. In Cavendish v. Wood, 1 Ch. Cases, 279, or 22 Eng. Rep. (reprint), 800, Lord Ch. Nottingham refused to decree the performance of an award against an infant, who appeared by his guardian, which was based upon a submission by consent and order of the court, because it was inequitable on its face, and he added that, "He would never decree an award which should bind an infant." Evans v. Cogan, 2 P. Wms., 450. Morse thus refers to the subject: "The agreement of an infant to submit to arbitration is like any other contract into which he might enter. There is an old English case in which his undertaking is declared absolutely void. But the later and conclusive authorities hold it to be only voidable. The presumed incompetency of an infant to have a proper care for his own interest will be kept by the courts within reasonable bounds. Thus, where an infant's claim for damage for an assault and battery had been submitted and the amount (541) awarded had been paid him. In a subsequent suit brought by him for the same cause of action, it was held that the jury should take into consideration the sum paid; if they thought it sufficient compensation, they should give only nominal damages; if they thought it insufficient, they should make up the deficiency. Whether or not equity will decree an award to be binding upon an infant seems a matter of *Page 397 
doubt, depending much upon the merits of the case." Morse on Arbitration, p. 4. So, in 3 Cyc., 588, the power to submit in any case is said to exist only "where there is a capacity to contract, with a liability to pay," and the power to enter into the contract of submission to arbitration must needs be commensurate with such legal capacity of the parties to it. It must therefore be that, in the case of infants, as their contracts are only voidable, their agreements to arbitrate must, generally speaking, be voidable and not void. 2 A E. (2 Ed.), 616. And so it was expressly adjudged in Britton v. Williams, 20 Va. (6 Munf.), 453, the Court saying: "Although infants are bound by judgments had under the superintendence and protection of the court, yet where the case is referred to arbitrators, whereby they are deprived of that protection, a submission by infants, even by rule of court, ought not to be sanctioned. For, as awards are in the nature of judgments, and are to be final and conclusive, which cannot be where one party has a right to avoid them, it follows that a submission by infants, although with adults, cannot be obligatory on either party." The Court held that as there was no valid submission in the case, there could be no award; and consequently the judgment should be reversed as far back as the writ. The same doctrine was announced in Baker v. Lovett, 6 Mass. 78, where it was said that infants are supposed to be destitute of sufficient understanding to contract, and the law therefore protects their weakness and imbecility, so far as to allow them to avoid all their (542) contracts by which they may be injured, including agreements which involve a release of their rights, as the law presumes that they have not sufficient discretion to put a fair value upon them. For the same reason, if an infant submit his rights to arbitration, he will not be bound by the award, from a presumed incompetency to choose suitable arbitrators and a lack of sufficient judgment to properly care for his own interests, and he is thus protected until he attains his majority. It follows from what we have said, that as an infant cannot convey an irrevocable title to another, he cannot submit to an award which would give the latter such a title.
Nor has a guardian ad litem or next friend the power to submit for the infant, even though the submission be a rule of court. "He cannot change the tribunal or the principles of decision." Morse on Arbitration, 25; Fortv. Battle, 13 Sm. and M., 133; Hannum v. Wallace, 9 Humph., 129. But it can make no practical difference in this case whether the award and judgment are void or voidable, as the infants in their complaints have alleged that the award was made and the judgment was rendered in a suit which was collusive and fraudulent, and therefore that they are void. This would seem to be a sufficient disaffirmance of them, and, indeed, the language is quite positive and unequivocal *Page 398 
in meaning. If they are to be set aside and disregarded, what difference can it make if it be done because they are void or voidable?
There is a more serious question to be considered and one the solution of which may be still more fatal to the award. The original suit was brought to have the life estate declared forfeited for waste, for damages for the waste committed, and for the cancellation of the deeds of the defendants. The arbitration reverses the object and the purpose of the suit and converts it into a proceeding to validate the deeds and thereby to save the life estate from forfeiture and to prevent (543) the recovery of damages and to give the plaintiffs, in lieu of their just rights, which were too well established to be even the subject of any controversy, a sum of money so small in comparison with the real value of their land as to lead any one to exclaim, "They got the infants' land for nothing." Collins v. Davis, 132 N.C. 111; Worthy v.Caddell, 76 N.C. 82.
The agreement, if there was any with the next friend of the infants, was one-sided in its operation and unequal in its effect. It did not require any arbitration or even consideration of the plaintiff's rights, but only an appraisement of property and a statement of the payments made by the defendants — not to plaintiffs, but to their father — in order that the defendants might, by the payment of the balance, or the difference in the amounts, acquire a valid title to the plaintiffs' land. If we can properly call such a proceeding an arbitration, it is not such a one as a court of equity should enforce or allow to stand in the way of the plaintiff's recovery. Indeed, we doubt if the court had the necessary jurisdiction, even in equity, to proceed thus to dispose of an infant's land, although it may have had the consent of the parties. It unquestionably has a general jurisdiction over the estate of an infant, and may sell his property, if it deems it for his interest and advantage to do so (Williams v. Harrington, 33 N.C. 616), but not dispose of it in the manner adopted, or for the purposes intended in the former suit. Troyv. Troy, 45 N.C. 85. There must be some attempt at least, by the next friend to protect the rights of the infant. In this case it appears that one of the parties gets an interest in the land without paying anything whatever to the infants, and the others acquire their interests at a most inconsiderable sum. In the language of Ruffin, J., speaking for the Court: "It would be a plain violation of right to leave the (544) judgment standing, so as to, operate as an estoppel upon these infants, when the Court can see that no real defense was ever made for them." Larkins v. Bullard, 88 N.C. 35.
The fact that judgment was entered upon the award according to the agreement in the submission does not under the circumstances of this *Page 399 
case impart validity to it. The judgment was by consent and is as open to attack as the submission and award.
Without discussing the matter more fully, we think there was evidence tending to establish the plaintiff's contention, which should have been considered by the jury upon each of the issues submitted.
The plea that they are purchasers for value and without notice cannot avail the defendants. It is freely admitted to be the general rule, as argued by the defendants' counsel, that innocent purchasers, or those who have purchased at a judicial sale without notice of any irregularity in the proceedings and judgment under which the sale was made, will be protected when it appears that the court had jurisdiction of the parties and of the subject-matter of the proceedings, and that the judgment on its face authorized the sale. This is but another way of stating the general principle that the judgment or decree of a court of having general jurisdiction over a subject-matter, subsisting unreversed, must be respected, and sustains all things done under it, notwithstanding any irregularity in the course of the proceedings or error in the decision.Williams v. Harrington, supra. Such a judgment will, therefore, sustain the title of a purchaser at a sale made under it, if he had no notice of the alleged defect in the proceedings. Sutton v. Schonwald, 86 N.C. 198;England v. Garner, 90 N.C. 197. But in our case the irregularities and defects are of such a nature and are so apparent upon the face of the record in the former suit that the defendants in that suit and those who now claim to hold under them must be presumed (545) to have had notice of said defects. So far as the irregularity in appointing the next friend of the plaintiffs is concerned, it would seem that the observations of the Court in Morris v. Gentry, 89 N.C. at pp. 254, 255, are sufficient to overcome the defendants' plea of a want of notice as to it. We do not decide, though how this is, as the arbitration, award, and judgment were all by consent in a case where it appeared in the record that the plaintiffs could not consent by themselves, by their next friend, or by the attorneys. There was a patent defect in the proceedings which should have been noticed by any one claiming under the judgment. In the cases cited by the defendants' counsel the defect did not appear on the face of the proceedings, but as far as the record in those cases showed, the court had proceeded regularly in the exercise of its jurisdiction over the parties and the subject-matter, although it afterwards appeared that in fact it had not done so.
But while the plaintiffs may be able to avoid the judgment and recover their property, they must observe the maxim that he who asks equity must do equity. If they insist upon their disability and the defect in the proceedings for the purpose of invalidating the title of the defendants, they must, when properly called upon to do so, restore any money *Page 400 
they have received under the judgment of the court or, if the money has been invested in land or other property, they must surrender the latter. Neither an infant nor a married woman will be permitted to repudiate a transaction upon the ground of a want of capacity, or for other sufficient cause, and at the same time retain and enjoy any benefit derived from it. But the receipt of money or anything else of value by the persons under disability during the course of the transaction does (546) not take away the right of election to repudiate it. Equity will restore his or her property to the disaffirming party, but the person who thus loses it will be permitted to recover any money paid upon the faith of the validity of the transaction, provided the money is then in hand or the property into which it has been converted can be reached by a proceeding in rem. Scott v. Battle, 58 N.C. 184; Hodge v. Powell,96 N.C. 64; Walker v. Brooks, 99 N.C. 207; Draper v. Allen, 114 N.C. 50.
This brings us to the conclusion that there was no error in our former decision, though somewhat different reasons may have been given for that decision than those which are now assigned.
Petition dismissed.
HOKE, J., took no part in the decision of this case.
Cited: Settle v. Settle, 141 N.C. 573; Yarborough v. Moore, 151 N.C. 120;Mangum v. Mangum, ib., 271; McDonald v. Hoffman, 153 N.C. 257; Rawlsv. Mayo, 163 N.C. 180; Cooke v. Cooke, 164 N.C. 287.