IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM 1837.

## Wilt *against* Welsh.

Whenever the substantive ground of an action against an infant is contract, as well where the contract is stated as inducement to a supposed tort, as where it is not, the plaintiff cannot recover.

ERROR to the common pleas of *York* county.

Charles Welsh against Peter E. Wilt. Declaration in trover to recover the price of a horse. Pleas, not guilty and the infancy of the defendant. To the latter plea the plaintiff demurred. The facts of the case, as given in evidence by the plaintiff, were, that the defendant had hired a horse from him, to ride to a particular place, and that he drove him to another and more distant place, in consequence of which, the horse sickened and died. After much evidence was given on both sides as to the facts, the jury found for the plaintiff; and the court rendered a judgment on the demurrer for the plaintiff.

The error assigned was, in rendering a judgment on the demurrer for the plaintiff.

*R. J. Fisher*, for plaintiff in error, cited 3 *Rawle* 351; 4 *Dall.* 130; 6 *Cranch* 226; 5 *Mass.* 104; 3 *Starkie* 1493.

VI.—B

[Wilt v. Welsh.]

*Ramsey* and *Evans*, contra, 5 *Mass.* 104; 2 *Wend.* 137.

The opinion of the Court was delivered by

GIBSON, C. J.—It would have been sufficient to rest the decision of this cause on the precedent of Penrose *v.* Curren, if the point had not since been ruled differently by the court of errors of New York; but a respect for the opinion of that court, renders it proper to re-examine the question on principle and authority. The ground of the New York case (Campbell *v.* Stakes) is that a positive breach of the contract is a disaffirmance which works a dissolution of it and reduces the infant to a level with an adult who is chargeable with a conversion for any act which subverts the nature of the bailment. That would, indeed, bring the common law principle of protection within a narrow compass; for there are few breaches of a bailment that are not subversive of it. The supposed act of subversion, in cases like the present, is the overworking of a horse or the otherwise abusing of the thing bailed, which, by the way, is at the same time an indisputable breach of the contract, and ground sufficient for an action on it. This being so, it remains to be seen whether an infant is chargeable for it in the shape of a tort. There are two cases (Powell *v.* Layton, 2 *N. R.* 365, and Weall *v.* King, 12 *East* 452) in which it is maintained that even an adult is not. In the latter of these, which was case against a carrier in the form of a tort, Sir James Mansfield remarked in delivering the opinion of the court, that " the form of the action cannot alter the nature of the transaction;" and that " though the non-performance of that which is originally contract may be made the subject of an action of tort, the foundation of that action *must* still be contract." Acting on that principle he allowed the defendant to plead the non-joinder of his partners in abatement; which could not have been done if the incidents of the contract had not survived the form of the action. According to Campbell *v.* Stakes, however, the infant's privilege extends no further than to preclude a recovery for a constructive tort, only by an action affirmative of the contract, and not by an action which appears on the pleadings to be for an independent trespass; but it will appear from an uninterrupted series of British decisions which seem to have been misapprehended in the American courts, that the difficulty lies deeper than the form of the remedy. It will be seen that no court in Westminster Hall has taken any such distinction; and that wherever the substantive ground of the action was contract, as well where the contract was stated as inducement to the supposed tort as where it was not, the plaintiff was discomfitted. The first of these is Cross *v.* Androes, 1 *Roll. Abr.* p. 2. Action on the case *D.* 3, in which an infant was held to be irresponsible on the custom of the realm for goods committed to his custody as an innkeeper; and there the attempted cause of action was clearly collateral to the contract, as it was also in Williams *v.* Harrison, *Carth.* 160, which

[Wilt v. Welsh.]

was an action on the custom of merchants against an infant as the drawer of a bill of exchange, and consequently not founded on a contract, for there is none betwixt a drawer and the payee: yet it was deemed sufficient for the infant in each of these, that the cause. of action had grown even indirectly out of a contract. So in Grove *v.* Nevill, 1 *Keb.* 778, an action on the case in the nature of deceit was abortively attempted to be sustained against an infant who had sold another's goods as his own, because there was no actual tort, but only a tort by construction; and there too the action was in form collateral to the implied warranty of title which is the only contract that can exist in such a case: yet it was deemed sufficient for the defence, that the gravamen was a transaction which had *originated* in contract. Johnson and Pye, 1 *Keb.* 905, was, if possible, still less affirmative of any contract, being an action on the case against an infant for having sealed a mortgage under a misrepresentation of his age; and Chief Justice Keeling is reported to have said that it would shake the very foundations of the common law to make him answerable for it, though there was clearly no stipulation or warranty express or implied, that the mortgagor had attained the age of discretion. In Manby *v.* Scott, 1 *Sed.* 129, which was decided on great consideration after three full arguments before all the judges and barons in the Exchequer Chamber, as well as repeated arguments in the King's Bench, it was solemnly resolved, that "if one deliver goods to an infant on contract, knowing him to be an infant, the infant shall not be charged in trover for them, for by that means all the infants in England might be ruined." In this, we have a proof of the prevailing efficacy of infancy as a defence to an action founded, not even in affirmance of a contract, but in property exclusively; and the reason given for it shows it to have been thought to rest, not on considerations of technical congruity, but on a broad principle of public policy. In the same emphatic tone, Lord Kenyon declared, in Jennings *v.* Rundall, 8 *T. R.* 335, that "if it were in the power of a plaintiff to convert that which arises from a contract into a tort, there would be an end to that protection which the law affords to infants;" and Mr. Justice Grose quoted the resolution in Manby *v.* Scott, with approbation. That case, like Campbell *v.* Stakes and the present, was an action for overdriving a mare hired to an infant; and it was made to turn, not on a distinction between trespass and case, but on a rule of policy superior to forms and applicable to all cases. Indeed the privilege would be little worth if it might be eluded by fashioning the action into a particular shape. Lastly came Green *v.* Greenbank, 2 *Marsh R.* 485, *S. C.* 4 *Eng. C. L. R.* 375, in which a fraudulent affirmation of soundness was not suffered to charge an infant with deceit because it had been made in the course of a contract. Thus have run the British decisions from the earliest periods, certainly from the reign of Elizabeth, to the present day; and they have been followed by this court in Curtin *v.* Patton, 11

[Wilt v. Welsh.]

*Serg. & Rawle* 310, and Penrose *v.* Curren, 3 *Rawle* 351: opposed to which, we have, beside Campbell *v.* Stakes, already noticed, the case of Vasse *v.* Smith, 6 *Cranch* 226, and three or four decisions of respectable courts in our sister states. In Hower *v.* Thwing, 3 *Mass.* 494, it was said that the distinction betwixt positive and constructive torts, was expressly rejected in Jennings *v.* Rundall. That, however, is not the only misapprehension of the learned judge who delivered the opinion of the court. It was said, also, that the resolution in Manby *v.* Scott, was predicated of goods *sold.* The words are: " Si un *deliver* biens al enfant pur contract, &c.;" which import a bailment rather than a contract executed. But no difference, in that respect, can be material; for if an infant rescind his purchase by refusing to execute his part of it, there is the same reason why the vendor should have an action on the right of property that there is why a bailor should have it in equal circumstances. Indeed the very case of an infant purchaser was precisely thus disposed of by the same court in Badger *v.* Phinney, 15 *Mass.* 359; which shows how little any interpretation of Manby *v.* Scott has been respected by it. The others, Vasse *v.* Smith, Wheelock *v.* Wheelwright, and perhaps Peigne *v.* Sutton, 4 *M'Cord* 387, rest on no very distinctive principle, but assume that an act subversive of the contract, is a conversion. But Campbell *v.* Stakes, though entitled to less authority merely as a decision, being the judgment of a popular court, yet distinctly enough discloses the foundation of the doctrine. The contract, it was justly said, comprises a promise to keep the thing from harm and return it at the stipulated time; for a negligent breach of which, it was admitted, the infant would not be liable as for a tort. But it was said that any positive act of injury inconsistent with the contract, would disaffirm it and leave him liable as if there had never been a contract. What is that but to make him a tortfeasor by construction? It is scarce maintainable, however, that a positive breach of the contract is an unqualified disaffirmance of it. Where the infant intended no disaffirmance, I am unable to see how the adult shall intend it for him, or insist that he rescinded the whole by perhaps an inconsiderable breach of a part. However convenient such a pretext might be to add a new responsibility to the predicament of the bailee or to extricate the bailor from an old one, it is to be remembered that the exercise of the privilege is not for the adult but the infant. I know nothing, nor did I ever before hear, of a constructive election to disaffirm in order to strip an infant of his privilege, and, by turning him from a contractor into a trespasser, to put him in a worse condition than if the contract had been indefeasible. Such a construction is not in keeping with the benign principles of the common law, which, in other cases, holds him only to such acts as are beneficial to him, and declares such as are positively detrimental to him to be positively void. Even were that otherwise, yet to give to an injury done to the thing bailed the

[Wilt v. Welsh.]

character of an independent trespass, would require the bailment to have been first terminated; for the very foundation of the argument is, that the contract was out of the way at the time; but by the most attenuated construction, its cessation and the inception of the wrong, could be but simultaneous. On what principle, then, can it be a trespass? The distinction taken in the Six Carpenters' Case, 8 *Co.* 146, betwixt an authority given by the law, whose abuse makes the offender a trespasser from the beginning, and a license by the party, whose abuse does not, has never been questioned. The killing of a beast distrained by the grantee of a rent charge makes not the distress a trespass, because it is given by the grant and not by the law, 1 *Inst.* 141. The reason is that a party is entitled to the best protection the law can give against the abuse of an authority delegated not by himself but by the law, which, to that end, makes void every thing improperly done under it; while a party who gives an authority to an unsafe person has only himself to blame for it. 6 *Wils. Bac.* 561. Now taking for granted that the act annihilated the contract, it cannot be denied that there was a precedent license for an excessive use of which, the infant is sought to be charged as for a trespass, with what pretence of reason, when an adult could not be so charged, it is unnecessary to say. The theory on which a breach of contract has been thus turned into a trespass, is as incomprehensible to me as the theory on which a common recovery bars an entail; and why we should employ any juggle whatever to tear from an infant the defences with which the law has covered his weakness, is equally incomprehensible. In the American courts, the hardship of particular cases, as in the earlier decisions on the statute of limitations, seems to have run away with the law; but it is to be remembered that particular hardships are to be borne in giving effect to every general principle of policy. To fritter away the rule by exceptions such as these, would expose a child of the most tender years to an action for the destruction of a delicate or dangerous instrument thoughtlessly or wickedly put into his hands; for, in contemplation of law, an infant of three years is not inferior in discretion to one of twenty. The mischiefs to which minors are exposed from the cupidity of those whose trade it is to pamper their appetites, are sufficiently depicted in Penrose *v.* Curren; and we are not disposed to surrender the principle asserted in it. It is clear that the evidence of infancy ought to have been admitted; and that the court erred also in directing that if the infant hired the horse to go to a particular place and injured him by going beyond it, he was guilty of a conversion.

Judgment reversed, and a *venire facias de novo* awarded.