JOSEPH II. HISLOP v. S. S. HOOVER.

A promise to pay certain debts by the purchaser of goods, which the owner of the goods at the time owed, is a sufficient consideration to support the sale, if the contract was *bona fide* made, notwithstanding the purchaser, when the contract was entered into, was an infant and without means.

An insolvent debtor, in a deed made by him, may prefer one creditor to another, if he does it *bona fide* and with no fraudulent intention. Such a preference being fraudulent and void only in case, proceedings to have the debtor adjudicated a bankrupt, are commenced within six months afterwards.

To allow a witness, after objection, to give a history of how he became indebted to a party in a suit, when such indebtedness had no relation to the point in issue, is error, and is a proper ground for a new trial.

(*Lewis* v. *Sloan,* decided at this Term, cited and approved.)

CIVIL ACTION, tried before *Henry, J.,* at the January (Special Term, 1872, of the Superior Court of MECKLENBURG county.

In his complaint, the plaintiff alleged that he was in possession of a stock of goods on and before the 19th Feb-

ruary, 1869, which were in store at Grier's storehouse, consisting of a general assortment of the value of about $1,200. That the defendant unlawfully took the goods, carried them away and still detains them.

The defendant denies the allegation contained in the complaint, and makes this statement in regard to the matter now in controversy. That the goods in question were the property of one Gallant, who had been selling goods in the same store for some years past, and that the plaintiff was his clerk. That Gallant owed him, the defendant, about $330; and to avoid paying this debt, made a fraudulent and pretended sale of the goods to the plaintiff, who was without means, and in fact no sufficient consideration whatever passed between the plaintiff and Gallant, and that the whole transaction was a sham and a fraud. That he, the defendant, sued out a writ of attachment, levied the same upon the goods in question and that the sheriff still has possession of them, the estimated value of the same being about $600.

For the plaintiff, J. F. Gallant testified : that plaintiff had been his clerk, and was a young man of business habits but of no means; that previous to the sale, they had agreed upon the price of the stock, and that the plaintiff went to Charlotte on one or two occasions for the avowed purpose of raising the money to pay for them; in this he failed, when finally he, the witness, sold the same to the plaintiff on the 23d of January, 1869, for $703.45, and in payment thereof, the plaintiff was to lift certain debts owing by witness, amounting to $703.48. The goods were sold at cost, 15 *per cent.* off, which was a fair price, the stock being old and broken. The witness further stated, that he and the plaintiff saw his creditors, who agreed to receive the plaintiff's note endorsed by himself, for the amount owing to them; that this arrangement, or most of it, took place before the sale was perfected. That no money passed between the parties,

but that a small portion of the debts above alluded to had been paid before the seizure. He further stated, that the plaintiff had purchased $200 or $300 worth of goods in addition to those purchased from him, and had sold about $100 worth before the said seizure; these goods were taken by defendant with the original stock. That the sale to plaintiff was absolute, and he, himself, retained no control over the goods, or any right to see that the proceeds were applied on the debts which plaintiff had assumed for him. He also testified that he was indebted far beyond his ability to pay, and that his homestead and personal property exemption had been allotted to him.

The witness, Gallant, was then, after objection by defendant, permitted to give a history of his indebtedness to the defendant; that his note was given to defendant for borrowed money, borrowed at 15 *per cent.*, an usurious rate of interest, &c.

Evidence was also offered tending to show that a small portion of Gallant's debts had been paid by plaintiff, and also as to the value of the goods, &c.

For the defendants, one Lyttle testified: that he was the officer who seized the goods; that when he made the seizure the plaintiff objected to his taking those he had bought since the purchase from Gallant, but did not say much against his taking the others; that Gallant's personal property was laid off to him before the goods were sold, and a part of those seized had been returned to make up the amount allotted to him. That the property was seized under an attachment, regularly issued from Mecklenburg Superior Court, in favor of defendant, as a creditor of Gallant.

His Honor charged the jury that they should enquire: Was the sale by Gallant to Hislop a *bona fide* transaction? Or was it a simple transfer to carry on the business in the name of a new man? If it was a sham trade done with a view to fraudulently defeat the legitimate purposes declared

at the time, viz : the honest payment of his debts, then it was void. That a man had a right to prefer his creditors in the payment of his debts, provided he does it in sincerity, and the debts are real and *bona fide* due. In other words, is this transaction an honest attempt to pay as far as his means will go, to keep nothing back for himself, except what the law allows him to retain ? If the trade was made in good faith, for value, with the design to appropriate the property to the payment of the debts named, which debts were justly and honestly due, then the plaintiff must recover, notwithstanding the defendant and other creditors were excluded and got nothing.

The defendant asked the Court to charge :

1st. There was no consideration for the contract on the 23rd January, 1869, and it is therefore void as to creditors. This instruction his Honor declined to give.

2d. That the giving a new note to Gallant's creditors with Hislop as principal and Gallant as surety, constituted no consideration, as Gallant was already bound and continued bound. This, also declined.

3d. That the verbal promises of the plaintiff to pay the debts of Gallant, accounts and notes, were void under the the Statute of Frauds and constituted no consideration. This instruction was given as asked.

4th. A sale by which a preference is purposely given to one creditor over another, is void under the act of Congress, known as the Bankrupt Act. This the Court declined to give.

5th. That the sale or transfer by an insolvent debtor of all of his property, above that exempted by law, without security, to an equally insolvent man, who could retain it as exempt from execution by law, thus consuming $1,000 worth of personal property, by creating two exemptions of $500 each, was fraudulent and void as against creditors. This the Court also declined to give.

There was a verdict for the plaintiff.   Rule for a new trial ;
rule discharged.   Judgment, and appeal by defendant.

*Dowd* and *Guion*, for appellant.
*Wilson* and *Bynum*, contra.

RODMAN, J.   The action is brought to recover damages.
for a trespass in taking the plaintiff's goods.   The defen-
dant pleads that he recovered a judgment and had execution
against one Gallant, to whom the goods belonged, and who
had conveyed them to plaintiff with intent to defraud his
creditors, and he justifies the seizure of the goods under
the execution.

It was admitted that a part of the goods had belonged to
Gallant, and there was evidence tending to show that Gal-
lant being insolvent had sold them to the plaintiff, an in-
fant without pecuniary means or property, in consideration
of his promise to pay certain debts which Gallant owed, to
the value of the goods.

If this contract of sale was *bona fide*, there was a sufficient
consideration in the contract of the plaintiff, notwithstand-
ing his infancy and want of means, to support it.   The
contract of an infant is voidable, but not void.   It is a
precarious and uncertain consideration, the nature of which
must be considered by the jury as bearing on the question
of *bona fides;* but the law does not say that it is so perfectly
valueless as to be no consideration, and to make a sale
founded on it necessarily fraudulent.

As to the objection that a sale of goods worth only $703
to a man of no means must necessarily be fraudulent as to
the creditors of the vendor, because he thereby puts it in
the power of the vendee to defeat a recovery of the price by
setting up his personal property exemption, that cannot
concern the defendant, because he has no claim against the

plaintiff, not being one of the creditors whose debts he assumed.

The only question in this case was as to the *bona fides* of the transaction, which was one entirely of fact. There was evidence from which the jury would have been justified in finding that the sale was fraudulent, or that it was not. We cannot revise their verdict. All the circumstances put in evidence seem to have been fairly submitted to the jury. The charge of the Judge was sufficiently clear, and we see no error in it. He directed them to inquire: "1. Was the sale by Gallant to Hislop a *bona fide* transaction; or, was it a simple transaction to carry on the business in the name of a new man? If it was a sham trade, done with a view to fraudulently defeat the legitimate purposes declared at the time, viz.: the honest payment of his (Gallant's) debts, then it was void," &c.

His Honor was requested to hold, that a sale by an insolvent debtor, made with the intent to prefer one creditor to the others, was fraudulent and void, by force of the Bankrupt Act. This he declined to do. Whatever the law in that respect may be, such a preference is fraudulent and void only in case proceedings to have the debtor adjudicated a bankrupt are commenced within six months afterwards, which it does not appear was done. In the absence of such a proceeding, a deed is not avoided merely by reason that it gives a preference, and an insolvent debtor may prefer if he does it *bona fide* and with no fraudulent intention. This has been often decided, and the law has not been altered by the Bankrupt Act, except upon the condition mentioned. See the case of *Lewis* v. *Sloan*, at this term. There was a verdict for the plaintiff, and defendant appealed.

It is to be regretted that we are under the necessity of giving a new trial in a case, in which the matter in controversy is so small in proportion to the costs.

Gallant was examined as a witness for plaintiff, and "was permitted to give a history of the transaction by which he became indebted to the defendant after objection by defendant's counsel, when he went on to state that the note was given for money borrowed at fifteen *per cent. per annum,* a usurious rate of interest," &c.

We are at a loss to conceive on what ground the Judge conceived this evidence competent. It could not avoid the defendant's judgment. It was not in any way pertinent or relevant to the issues on trial, and could only tend to raise a prejudice against the defendant by holding him out in the odious character of a usurer. It may be that it had little or no influence, but we cannot see that it had not any; and if a plaintiff will hazard his case, by pressing in evidence at the same time irrelevant and prejudicial to the defendant, he cannot complain of losing the benefit of his verdict, in consequence.

For this error the judgment is reversed.

Let this opinion be certified.

PER CURIAM.                                    *Venire de novo.*