### PIPPEN v. MUTUAL BENEFIT LIFE INSURANCE CO.

(Filed March 4, 1902.)

INFANTS—*Contracts—Insurance—Life Insurance.*

> Where an infant surrenders a life policy for its cash value, he and his personal representatives are bound thereby.

ACTION by F. L. Pippen, administrator of the estate of J. H. Pippen, against the Mutual Benefit Life Insurance Company, heard by Judge *Thos. A. McNeill,* upon an agreed statement of facts, at June Term, 1901, of the Superior Court of HALIFAX County. From a judgment for the defendant, the plaintiff appealed.

*Day & Bell,* for the plaintiff.
*Thos. W. Hill,* for the defendant.

COOK, J.   This is an action brought by the administrator of Joseph H. Pippen, to recover the sum of one thousand dollars, alleged to be due upon the death of said Joseph by reason of a certain life insurance policy issued by defendant company to said Joseph.   It appears from the facts agreed that Joseph was an infant when he applied for and obtained the policy, and died during his infancy.   The application was made on the 4th day of February, 1897, and the policy was issued to him on the 10th day of said month.

It was agreed in its policy by the defendant company that, in consideration of $40.54 to it in hand paid and of the annual premium of $40.54 to be paid on the 10th day of February in every year until twenty full years' premiums shall have been paid, it would, on the 10th of February, 1917, pay to the assured one thousand dollars, or should he die before that time, then upon his death and proof thereof, to pay said amount to his executors, administrators and assigns.   After the issuance of the policy, and while the same was in force, plaintiff's intestate, pursuant to a provision contained in said policy in consideration of the sum of $54.40 (the then cash value of said policy) paid to him by the company, fully surrender and deliver the said policy to the defendant company, and thereafter, to-wit, on the 17th day of February, 1899, died.

The good faith and fairness of these transactions with the infant (intestate) is not questioned; and it is expressly stated in the case agreed that "the said surrender was voluntarily made and executed in writing by the said intestate *bona fide* and without compulsion or undue influence on the part of the defendant."

The main contention of the plaintiff is that the surrender of the policy by his infant intestate was a voidable contract, which he, in this action, seeks to avoid, and sues to recover upon the original contract of insurance which he endeavors to affirm. His Honor, upon the facts agreed, rendered judgment in favor of the defendant, and plaintiff appealed.

We sustain his Honor, and hold that the plaintiff is not entitled to recover.

The contract of insurance made with the infant, plaintiff's intestate, was not for necessaries, and was therefore voidable at his election, but binding upon the defendant company. It was an executory contract (*Lovell v. Insurance Co.*, 111 U. S., 264), relating to personalty; (*Coningland v. Smith,* 79 N. C., 303; *Simmons v. Biggs,* 99 N. C., 236; *Hooker v. Sugg,* 102 N. C., 115), 3 L. R. A. 217, 11 Am. St. Rep., 717, and could, therefore, be avoided by him during his infancy. *State v. Howard,* 88 N. C., 650, on page 652; Clark on Contracts, page 244. His disaffirmance could have been made either by refusing to perform his part of the contract, and then pleading his disability in a suit for its enforcement; or by a voluntary annulment or cancellation made by agreement with the company. And it appears that he adopted the latter course by a voluntary surrender of the policy and receiving its cash value.

But it was argued by the learned counsel for plaintiff that the intestate did not receive the full amount to which he was entitled by reason of the terms expressed in a "note" or condition appearing on the policy. Be that as it may, the disaffirmance of the contract by voluntarily surrendering it rendered the contract void *ab initio,* and the intestate then became entitled to be restored to his original status, which is not the subject of this controversy.

It is further insisted by plaintiff that the surrender or de-

livering up of the policy, in consideration of the sum paid
to him by the company, was a *sale* of the policy made by his
intestate to the company, and in this action he, having af-
firmed the contract of insurance, disaffirms the sale, and is
therefore entitled to recover upon the policy, although it had
been delivered to the company. This contention can not be
sustained, because the property, or interest, so vesting in the
intestate, was a contingency liable to be defeated and incapa-
ble of delivery, actual or constructive, and therefore not the
subject of sale; or, should it be considered an assignment,
the instant the interest of the intestate passed out of him
into the company, *eo instanti* the obligations therein imposed
ceased and the contract rescinded.

In the case of *Edgerton v. Wolf,* 6 Gray, 453, the defend-
ant, an infant, purchased a horse, which was delivered to him,
with the right to return the horse if he could not get the
money to pay for him, and, after failing to get the money, re-
turned the horse to the vendor plaintiff; but afterwards took
the horse from plaintiff's possession and sold him. The Court
there held that the sale made to the infant was voidable at his
election, and his returning the horse voluntarily, intending
to give up all his interest in the property, was an avoidance
of the contract, and all the rights of the vendor revested in
him, and the infant defendant ceased to have any right over
the property, and could not retake the same against the will
of the vendor plaintiff.

So, it appearing that the surrender of the policy was a dis-
affirmance of the original contract of insurance, rendering
the same absolutely void *ab initio* (Clark on Contracts, page
258), a "disaffirmance can not be retracted. Ratification of
a contract, after it has once been disaffirmed, comes too late.
* * * When the infant has exercised the privilege to re-
scind his contract, he can not afterwards abandon or repudiate

the rescission and take the other alternative." "The contract having been made void, can not be revived, except by mutual consent," says the Court in *McCarty v. Iron Co.*, 92 Ala., 463, 12 L. R. A., 136.

There is no error, and the judgment of the Court below must be

Affirmed.