MOORE v. HORNE.

---

## L. F. MOORE v. HUGH HORNE.

(Filed 17 November, 1910.)

**1. Insane Persons—Torts—Damages.**

A lunatic is liable in damages for a tort committed by him, and the measure of damages is compensation for the injury inflicted, and punitive damages are not recoverable.

**2. Same—Evidence—Punitive Damages.**

In an action brought against a lunatic for his tort committed in assaulting and injuring the plaintiff, wherein actual damages alone are sought to be recovered. evidence offered by plaintiff tending to show that defendant was sane at the time complained of is inadmissible, as such would only be competent when punitive damages are claimed.

**3. Same—Resisting Arrest—Abusive Language.**

> In an action brought to recover actual damages for an injury tortiously inflicted by defendant, a lunatic, evidence that defendant resisted arrest under a warrant issued by a justice of the peace for the same criminal offense, and was abusive in his language to the officer arresting him, is incompetent for the purpose of proving the assault in the civil action. It is not harmless error, as it tends to prejudice the minds of the jury.

CLARK, C. J., dissenting on the ground of harmless error.

APPEAL from *Lyon, J.,* at the April Term, 1910, of ANSON.

Civil action for damages for an assault.

These issues were submitted:

First. Was the plaintiff injured by the defendant, Hugh Horne, as alleged in the complaint? Answer: Yes.

Second. What damages, if any, is the plaintiff entitled to recover? Answer: Twenty-five hundred dollars.

The court overruled motion for new trial and rendered judgment for plaintiff, from which the defendant appealed.

The facts are sufficiently stated in the opinion of the court.

*Robinson & Caudle* for plaintiff.
*Jas. A. Lockhart, McLendon & Thomas* for defendant.

BROWN, J. The evidence tends to prove that the defendant is insane and has been so adjudged by proper proceedings and was duly confined in jail, and application made for admission in an asylum of the State. There is evidence offered tending to prove that prior thereto the defendant assaulted the plaintiff with a pistol and injured him.

The plaintiff does not claim punitive damages, but actual or compensatory damages only. A lunatic is liable in a civil action for any tort which he may commit. The proper measure of damages in an action against a lunatic for tort committed by him is compensation for the injuries sustained. It cannot include punitive damages. *McIntyre v. Sholty,* 2 American State Reports, 140.

In the foregoing case the lunatic shot and killed the deceased and his estate was held liable in damages. The court excluded the evidence of insanity in the case and the ruling of the trial

court was affirmed. An insane person is just as responsible for his torts as a sane person. *Williams v. Hayes,* 42 Amer. Reports, 743; 28 L. R. A., 153; Cooley on Torts, 3d Edition, 171; Sherman & Redfield on Negligence, sec. 122. Upon the same principle infants are held liable for their torts. *Crump v. McKay,* 53 N. C., 34; *Smith v. Kron,* 96 N. C., 397.

It was therefore erroneous to admit evidence upon part of plaintiff that defendant was sane when he committed the act, unless plaintiff sought to have the jury impose smart money or punitive damages, which is not the case.

This error may have been cured by the charge of the court in directing the jury not to allow punitive damages, but we call attention to it so as to guide the court below on another trial, to the end that all such evidence be eliminated.

His Honor, however, permitted plaintiff to prove that the defendant was arrested in a criminal proceeding for this alleged assault upon plaintiff and further permitted the following question and answer:

Q. Mr. Redfearn, did you help to arrest Horne for the shooting of Fairley Moore? A. Yes, sir.

Q. What did he do—what was his condition on that occasion? A. Well, I was outside the store and I heard scuffling, and Horne was cursing and trying to get loose, and the officer that had him had his handcuffs out and asked me to put them on him, and I did. I can't recall his language very well, but he was cursing and abusing people, and was drunk. To all of which defendant in apt time objected and noted exceptions.

The admission of such evidence was entirely irrelevant to the matters at issue in this case and was well calculated to harm the defendant, who denies in the pleadings that he committed any assault upon the plaintiff.

The fact that he was arrested on a criminal warrant charging defendant with the very assault which is made the foundation of this action is incompetent here. It is no evidence that the defendant committed the assault as alleged in the complaint.

The conduct of the defendant in resisting arrest under the warrant is wholly foreign to the matters at issue in this civil action. The introduction of such incompetent evidence was well

calculated to inflame and prejudice the minds of the jurors against the defendant so as to possibly influence their judgment upon both issues submitted to them.

As the case is to be tried again it is needless to discuss the other assignments of error.

New trial.

CLARK, C. J., dissenting. The defendant, in an *ex parte* proceeding, was adjudged a lunatic. The plaintiff necessarily moved to have a guardian *ad litem* appointed. This was no estoppel on the plaintiff.

The evidence left no doubt that the defendant shot the plaintiff. Certainly there was ample evidence which justified the jury in so finding.

The only proposition of law involved was, that in this action, if the defendant did the shooting he was liable for compensatory but not for punitive damages, and the judge so told the jury. The defendant on cross-examination brought out much evidence tending to show that the defendant was insane at the time of the killing, which was not controverted, and the plaintiff on re-examination went into the same matters—for what purpose, on either side, does not appear. Among other questions asked was one as to the conduct of the defendant when arrested on the criminal charge. This question was asked not to show that the defendant was arrested, but to show his conduct on that occasion, and was along the line of the cross-examination by defendant's counsel.

The real question of fact as to the defendant having done the killing and the amount of damages and the proposition of law, which was correctly laid down by the court, as to the measure of damages, were in no wise affected by these matters brought out on the cross-examination and again worked over on the re-direct. The evidence on both sides, in this respect, was irrelevant and immaterial. It could not possibly affect the result, and therefore was not ground for a new trial. This has been repeatedly held by this Court. *Collins v. Collins,* 125 N. C., 98; *Spruill v. Columbia,* 153 N. C., 48, and *Manufacturing Co. v. Townsend, ib.; Freeman v. Brown,* 151 N. C., 113, and cases there cited.

The wholesome doctrine that harmless error should not be the ground for a new trial, even in a criminal case, has never been better stated probably than in a recent case in Oklahoma, *Byers v. Territory,* 103 Pac., 532, from which it may be well to cite at some length:

"The more we reflect upon the doctrine of harmless error the more clearly we will see that it is in strict harmony with the philosophy of the law, and that its recognition and enforcement by appellate courts is absolutely necessary for the administration of justice.

"Justice demands that in the administration of law its processes should never become a game of skill between contending counsel. There has been entirely too much of this in the past. It has resulted in the miscarriage of justice in many cases, and has bred a spirit of disgust for law and contempt for courts in the public mind. Reduced to its last analysis, the doctrines contended for by counsel, if recognized, would require this Court to hold that, where evidence is admitted during a trial, and upon appeal it is held that such evidence was improperly admitted, a reversal of the conviction must follow, regardless of the character of the evidence in the record, upon the ground that, the prosecution having offered its evidence as a part of its case, it is estopped from denying its injurious effect.

"It appears to us that this application of the doctrine of estoppel to the State, in the enforcement of its criminal law, on account of the ignorance or mistaken judgment of one of its servants, is technicality run mad. We decline to be bound by, or to follow, a line of authorities so repugnant to reason, so demoralizing to respect for law, and so destructive to justice. The habit of reversing cases upon technicalities is a very convenient one for appellate courts, for by so doing they can escape much hard labor, and all responsibility for their decisions, for a violation of some technical rule can be found in almost every closely contested case.

"We believe that appellate courts should faithfully and fearlessly do their duty, and decide every question presented with reference to the substantial merits of the case in which it arises.

153—27

In this way only can justice be administered. Ignoring justice, there is not only lost to the courts the confidence and respect of the people, but it has also greatly alarmed the profession of law itself.

"No one can say the members of the American Bar Association are sensātionalists, or wanting in learning or ability. It is eminently a conservative body. Yet we find them crying out against and proposing a remedy for this evil. At its last meeting at Seattle, Wash., it recommended to Congress the following amendment to the Revised Statutes of the U. S.: 'No judgment shall be set aside or a new trial granted, by any court of the United States, in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of an entire case, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. 1 U. S. Comp. Statute, p. 715. No writ of error shall be issued in any criminal case unless a Justice of a Supreme Court shall certify that there is probable cause to believe that the defendant was unjustly convicted. 1 U. S. Comp. St., p. 575.' The same recommendation was adopted by the New York State Bar Asso. at Buffalo, 28 and 29 Jan., 1909.

"The enforcement of the doctrine of harmless error will greatly improve the character of our criminal trials. Lawyers will be compelled to try cases upon the actual merits and will cease devoting so much time in attempting to force technical errors into the record. The needless waste of so much valuable time, and the expenditure of a great deal of money, will be saved, and far better results will be reached in the administration of justice, and the courts will gain the confidence and respect of the people, and acts of mob violence will cease to disgrace our State. The reversal of the just convictions of the guilty, upon purely technical questions, is the prime cause of want of confidence in the courts. This want of confidence often results in mob violence on the part of a long-suffering and outraged public."

What is said above by the Oklahoma Court, endorsing the res-

JONES *v.* RAILROAD COMPANY.

olutions of the two greatest bar associations in this country, is but a statement in a fuller and more complete manner of what this Court has repeatedly held in a more succinct form, *i. e.,* that the presumption is that the proceedings below were correct, and that the burden is on the appellant, not only to allege and prove error committed, but it must show that this error was prejudicial.

In this case the shooting of the plaintiff is the ground of a civil, not of a criminal action, and the damages sought are not punitive, but merely compensatory. The evidence of which the appellant complains was irrelevant, and immaterial and could not possibly have affected the result. There could be no real controversy that there was evidence, uncontradicted, from which the jury might well find that the defendant did the shooting. The proposition laid down by the court that the plaintiff sought, and could recover only compensatory damages was clearly correct. And these were the only matters in the case. Moreover, the irrelevant testimony was brought out in reply to the same kind of testimony elicited from the plaintiff's witnesses by the defendant on cross-examination.