GREENSBORO MORRIS PLAN COMPANY AND HARE'S MOTORS OF CAROLINAS, INC., v. J. I. PALMER AND C. S. PALMER, GUARDIAN AD LITEM OF J. I. PALMER.

(Filed 14 March, 1923.)

### 1. Infants—Contracts—Disaffirmance—Void Contracts.

Concerning personal property, and excluding contracts for necessaries and such contracts as a minor is authorized by statute to make, an infant may during his minority avoid his contracts, and such avoidance, when effected, is irrevocable and renders the contract void *ab initio.*

**2. Same—Torts—Misrepresentations as to Age—Fraud and Deceit.**

The principle upon which an infant may avoid his executory contract rests upon the policy of the law to protect him during his minority from designing persons, etc., and his right to a disaffirmance, though frequently it may be injurious to the other contracting party, is not affected by the fact that he had misrepresented his age, or appeared in maturity to have reached the age of discretion, and relying thereon the other party had entered into the contract he has disaffirmed.

**3. Same—Damages.**

While an infant may be held responsible in damages for a pure tort unconnected with a contract upon which the law does not render him liable, it is otherwise when he disaffirms a contract of this character, which the policy of the law permits him to disaffirm.

**4. Same—Actions—Form of Action.**

Where the damages sought in the action are based upon an executory contract of an infant concerning which it is the policy of the law to render void upon his disaffirmance, the form of the action in alleging the tort of the infant in inducing the other contracting party to enter into the contract by misrepresenting he was of full age, is ineffectual to produce a different result.

**5. Same—Benefits Retained—Vendor and Purchaser—Consideration Paid.**

Where a minor has purchased an automobile truck, paid partly for it, mortgaged it to obtain part of the purchase price, and given his notes to the seller secured by chattel mortgage for the balance, and the truck has been seized and sold under the liens: *Held,* the principle which forbids the minor to retain a benefit from his contract after disaffirmance applies, but he may recover the part payment he has made to the purchaser, including that borrowed for the purpose; and the fact that he has received and spent money he has earned in the operation of the truck does not affect the result.

STACY, J., dissenting.

APPEAL by plaintiffs from *Harding, J.,* at September Term, 1922, of GUILFORD.

The plaintiffs brought suit to recover $1,308 as damages for false representation and deceit. They alleged that on 19 July, 1920, the defendant J. I. Palmer was only nineteen years old, but had the appearance of a man of full age, and was emancipated and married; that at that time he was engaged in the business of hauling lumber and falsely represented to them that he was over twenty-one, by means of which he deceived them and induced them to sell him a truck at the price of $3,014.32, to secure which he executed his note and chattel mortgage on the truck. It is admitted that he paid the Hare's Motors $1,016.91 and the Greensboro Morris Plan $1,006.32, and that under proceedings in claim and delivery the truck was seized and sold by the plaintiffs for $700. The plaintiffs further alleged that of the payments made $1,223.23 was money made by using the truck. The defendant for the purpose of

his motion for judgment did not deny that he was a minor, or that he made the alleged false representation. He moved for judgment upon the pleadings, and Judge Harding held that the plaintiffs could not recover either on contract or in tort, and adjudged that the plaintiffs should take nothing by their action, and that the defendant should recover of the Hare's Motors $1,016.91 and from the Morris Plan Company $1,006.32, with interest on such sums from 1 December, 1920. The plaintiffs excepted and appealed.

*Brooks, Hines & Smith and B. D. McCubbins for plaintiffs.*
*Shuping, Hobbs & Davis for defendant.*

ADAMS, J. It may be remarked in the beginning that the controversy is not concerned with real estate, and that in this jurisdiction the law has been declared with respect to an infant's right to avoid his contract relating to personal property. Omitting reference to contracts for necessaries, and to such contracts as a minor is authorized by statute to make, the Court has held that an infant may, during his minority, avoid his contract relating to personal property, and that such avoidance, when effected, is irrevocable and renders the contract null and void *ab initio*. *Pippen v. Ins. Co.,* 130 N. C., 23; *Norwood v. Lassiter,* 132 N. C., 56; *Austin v. Stewart,* 126 N. C., 525; *S. v. Howard,* 88 N. C., 651; *Devries v. Maxwell,* 66 N. C., 45; *S. c.,* 68 N. C., 401; *Hislop v. Hoover,* 68 N. C., 141; *Freeman v. Bridger,* 49 N. C., 1; *Francis v. Felmit,* 20 N. C., 637; *Chandler v. Jones,* 172 N. C., 569.

This doctrine seems to be established. It is approved and maintained with practical unanimity, and while the infant's right to disaffirm his contract may sometimes be exercised to the injury of the other party, the right nevertheless exists for the protection of the infant against his own improvidence, and may be exercised entirely in his discretion. 1 Elliott on Contracts, sec. 302; 3 Page on Contracts, sec. 1593; *Dibble v. Jones,* 58 N. C., 389. And fraud is not a bar to the exercise of the infant's right to disaffirm. Indeed, it is generally held that if an infant is sued on his contract, his fraud in procuring the execution of the contract will not prevent his disaffirmance, or, as stated by *Judge Cooley,* "All the cases agreed that if an infant is sued on his contract, his fraud will not preclude his relying upon his infancy as a defense in that suit." 1 Cooley on Torts, 188 n; *Kirkham v. Wheeler-Osgood Co.,* 14 Ann. Cas., 535 n; *Rosa v. Nichols,* 6 A. L. R., 413 n; *Loan Assn. v. Black,* 119 N. C., 323.

But an infant is liable for his torts. There can now be no doubt as to his liability for the commission of a pure tort—a *"tort simpliciter"*—

which is disconnected with contract. *Moore v. Horne,* 153 N. C., 415; *Kron v. Smith,* 96 N. C., 393; *Crump v. McKay,* 53 N. C., 35. There is authority to the effect that if the tort be connected with his contract, the question of his liability may be resolved by the time at which the tort is committed, or by the relation which the wrong sustains to the subject-matter of the agreement, or by the question whether the contract is substantially the ground of the action. For example, it is the generally accepted view that infancy is a defense to an action for false representation as to anything which is essentially the subject-matter of the contract. This principle is applied in *Fitts v. Hall,* 9 N. H., 441, one of the cases on which the plaintiffs rely, in which *Parker, ·C. J.,* said: "If the tort or fraud of an infant arises from a breach of contract, although there may have been false representations or concealment respecting the subject-matter of it, the infant cannot be charged for this breach of his promise or contract, by a change of the form of action. But if the tort is subsequent to the contract, and not a mere breach of it, but a distinct, willful, and positive wrong of itself, then, although it may be connected with a contract, the infant is liable."

The difficulty frequently encountered is in the practical application of these principles, for the courts are not in accord as to when the alleged tort is independent of or is essentially connected with the contract, or when the contract is the substantial basis of the action. This, perhaps, is the chief cause of the marked difference of opinion expressed in the decisions of various jurisdictions in this country. To reconcile the conflict of opinion is impossible, and we must determine the question presented in the appeal by adhering to the principles which in our judgment are consonant with the policy outlined in former decisions and with the fundamental principles of the law affecting contracts made by those of immature years.

The first decisions on the question before us were rendered in the reign of Charles II. In 1665 the English rule was established in *Johnson v. Pye,* 1 Lev., 169; 1 Keb., 913; 83 Eng. Rep., 353, 1312, 1317; Sid., pt. 1, p. 258. Following is the case as reported: "The defendant affirms to the plaintiff that he was of full age, on which the plaintiff lends him the money. And he takes his security (a mortgage) when in truth he was only twenty and a half. Then he avoids his security. And a difference was taken between torts and contracts of infants, for though infants will not be bound for contracts, yet they will be bound for torts. But though infants will be bound for actual torts, as trespass, etc., which are *vi et-contra pacem,* yet they will not be bound by those which sound in deceit, for if they should be, all the infants in England would be ruined. And according to Keble, *Keeling, J.,* said: 'Such torts that must punish an infant must be *vi et armis,* or notoriously

against the publick; but here the plaintiff's own credulity hath betrayed him.' And *Windham, J.,* said: 'The commands of an infant are void; and for such he shall never be attainted a disseisor; much less shall he be punished for a bare affirmation. . . . Also, by this means all the pleas of infancy would be taken away, for such affirmations are in every contract.' " 57 L. R. A., 675.

This decision has been vigorously assailed on the ground that it is dubious, and that the disposition of the case is uncertain; but in England it has withstood all assaults and "has been stolidly followed again and again as the highest authority, and it is now firmly established in that country as law that an infant is not liable at law for his deceit in inducing a contract." 57 L. R. A., 675 n.

It is in this country that the confusion has arisen. Here the decisions are in hopeless conflict. In the summary of the note just cited it is said that the weight of authority here is against the English rule, but Cooley says that the tendency here is with the English cases. 1 Cooley on Torts, 186. Perhaps nowhere has the decision in *Johnson v. Pye* been criticised with more force and clearness than in two of the cases cited in the plaintiffs' brief. In *Fitts v. Hall,* 9 N. H., 741, *Parker, C. J.,* said: "The next question is whether this action can be maintained against the defendant for the fraudulent representation that he was of age, by reason of which the plaintiff was induced to sell him the hats, on a credit, and to take his note. . . . If infancy is not permitted to protect fraudulent acts, and infants are liable in actions *ex delicto,* whether founded on positive wrongs or constructive torts or frauds (2 Kent, 197), as for slander (Noy's Rep., 129, *Hodsman v. Grissel*), and goods converted (auth. *ante*), there is no sound reason that occurs to us why an infant should not be chargeable in damages for a fraudulent misrepresentation, whereby another has received damage. . . . But the representation in *Johnson v. Pye,* and in the present case, that the defendant was of full age, was not part of the contract, nor did it grow out of the contract, or in any way result from it. It is not any part of its terms, nor was it the consideration upon which the contract was founded. No contract was made about the defendant's age. The sale of the goods was not a consideration for this affirmation or representation. The representation was not a foundation for an action of *assumpsit.* The matter arises purely *ex delicto.* The fraud was intended to induce, and did induce, the plaintiff to make a contract for the sale of the hats, but that by no means makes it part and parcel of the contract. It was antecedent to the contract; and if an infant is liable for a positive wrong connected with a contract, but arising after the contract has been made, he may well be answerable for one committed before the contract was entered into, although it may have led to the contract."

And in *Rice v. Boyer,* 108 Ind., 472, *Elliott, C. J.,* uses this language: "It is evident from this brief reference to the authorities that it is not easy to extract a principle that will supply satisfactory reasons for the solution of the difficulty here presented. It is to be expected that we should find, as we do, stubborn conflict in the authorities as to the question here directly presented, namely, whether an action will lie against an infant for falsely representing himself to be of full age.  .  .  .  Our judgment, however, is that where the infant does fraudulently and falsely represent that he is of full age, he is liable in an action *ex delicto* for the injury resulting from his tort. This result does not involve a violation of the principle that an infant is not liable where the consequence would be an indirect enforcement of his contract, for the recovery is not upon the contract, as that is treated as of no effect; nor is he made to pay the contract price of the article purchased by him, as he is only held to answer for the actual loss caused by his fraud. In holding him responsible for the consequences of his wrong, an equitable conclusion is reached, and one which strictly harmonizes with the general doctrine that an infant is liable for his torts. Nor does our conclusion invalidate the doctrine that an infant has no power to deny his disability, for it concedes this, but affirms that he must answer for his positive fraud."

In this opinion the *Chief Justice* further said that the attempt to discriminate between pure torts and torts connected with contracts is not satisfactory, and that it is scarcely possible to conceive a tort not in some way connected with contract. "It seems to us," he asserts, "that the only logical and defensible conclusion is that he is liable to the extent of the loss actually sustained for his tort, where a recovery can be had without giving effect to his contract. The test, and the only satisfactory test, is supplied by the answer to the question: Can the infant be held liable without directly or indirectly enforcing his promise? There is no enforcement of a promise where an infant who has been guilty of a positive fraud is made to answer for the actual loss his wrong has caused to one who has dealt with him in good faith and has exercised due diligence. Nor does such a rule open the way for a designing man to take advantage of an infant, for it holds him to the exercise of good faith and reasonable diligence, and does not enable him to make any profit out of the transaction with the infant, because it allows him compensation only for the actual loss sustained. It does not permit him to make any profit out of an executory contract, but it simply makes good his actual loss."

These decisions are followed by several courts and by others are combatted and rejected as unsound. It is insisted by the latter that it is not difficult to conceive of torts which are entirely disconnected with any contract, and that the inevitable result of applying the decisions referred

to is indirectly to enforce the infant's contract, and thereby repudiate the doctrine almost universally adhered to that an infant may disaffirm and avoid his contract.   This position is supported by eminent authority.

In *Slayton v. Barry,* 175 Mass., 513, the plaintiff brought suit to recover damages for a sale of goods induced by an infant's false representation as to his age.   Denying the alleged right to recover, the Court said:  "The case is here on exceptions to the refusal of the presiding judge to give certain instructions requested by the plaintiff, and to his ruling ordering a verdict for the defendant.   The question is whether the plaintiff can maintain his action.   He could not bring an action of contract, and so has brought an action of tort.   The precise question presented has never been passed upon by this Court.   *Merriam v. Cunningham,* 11 Cush., 40, 43.   In other jurisdictions it has been decided differently by different courts.   We think that the weight of authority is against the right to maintain the action.   *Johnson v. Pie,* 1 Lev., 169; 1 Sid., 258; 1 Keble, 905; *Grove v. Nevill,* 1 Keble, 778; *Jennings v. Rundall,* 8 T. R., 335; *Green v. Greenbank,* 2 Marsh., 485; *Price v. Hewett,* 8 Exch., 146; *Wright v. Leonard,* 11 C. B. (N. S.), 258; *De Roo v. Foster,* 12 C. B. (N. S.), 272; *Gilson v. Spear,* 38 Vt., 311; 88 Am. Dec., 659; *Nash v. Jewett,* 61 Vt., 501; 4 L. R. A., 561; 18 Atl., 47; *Ferguson v. Bobo,* 54 Miss., 121; *Brown v. Dunham,* 1 Root, 272; *Geer v. Hovy,* 1 Root, 179; *Wilt v. Welsh,* 6 Watts, 9; *Burns v. Hill,* 19 Ga., 22; *Kilgore v. Jordan,* 17 Tex., 341; Benjamin, Sales (6 ed.), 23; Cooley, Torts (2 ed.), 126; 2 Addison, Torts, par. 1314: See *contra, Fitts v. Hall,* 9 N. H., 441; *Eaton v. Hill,* 50 N. H., 235; 9 Am. Rep., 189; *Hall v. Butterfield,* 59 N. H., 354; 47 Am. Rep., 209; *Rice v. Boyer,* 108 Ind., 472; 58 Am. Rep., 53; 9 N. E., 420; *Wallace v. Morss,* 5 Hill, 391.

"The general rule is, of course, that infants are liable for their torts. *Sikes v. Johnson,* 16 Mass., 389; *Homer v. Thwing,* 3 Pick., 492; *Shaw v. Coffin,* 58 Me., 254; 4 Am. Rep., 290; *Vasse v. Smith,* 6 Cranch, 226; 3 L. Ed., 207.   But the rule is not an unlimited one.   It is to be applied with due regard to the other equally well settled rule, that, with certain exceptions, they are not liable on their contracts; and the dominant consideration is not that of liability for their torts, but of protection from their contracts.   The true rule seems to us to be as stated in *Liverpool Adelphi Loan Asso. v. Fairhurst,* 9 Exch., 422, 429, where it was sought to hold a married woman for a fraudulent misrepresentation, namely:   If the fraud 'is directly connected with the contract,   .   .   . and is the means of effecting it, and parcel of the same transaction,' then the infant will not be liable in tort.   The rule is stated in 2 Kent Com. (8 ed.), par. 241, as follows:  'The fraudulent act, to charge him (the infant), must be wholly tortious; and a matter arising *ex contractu,* though infected with fraud, cannot be changed into a tort in order to

charge the infant in trover or case by a change in the form of the action.'

"In the present case it seems to us that the fraud on which the plaintiff relies was part and parcel of the contract, and directly connected with it. The plaintiff cannot maintain his action without showing that there was a contract, which he was induced to enter into by the defendant's fraudulent representations in regard to his capacity to contract, and that pursuant to that contract there was a sale and delivery of the goods in question."

In a similar case the Supreme Court of Vermont reached the same conclusion, *Tyler, J.,* saying: "While it is true, as a general proposition of law, that infants are liable for their torts, yet the form of action does not determine their liability, and they cannot be made liable when the cause of action arises from a contract, although the form is *ex delicto.* A reference to the declaration in the case shows that the representations made by the defendant as to his age, using the concise language of *Chief Justice Pierpont* in *Doran v. Smith, supra,* 'enter into and constitute an element of the contract itself; it is that that makes them actionable. The contract must be alleged and proved or there can be no recovery. The contract is the basis of the action. The fraud is predicated upon the contract.'"

Likewise, in *Mon. Build. Asso. v. Hexman,* 33 Md., 133, the Court said: "But it has also been urged that the infants were guilty of fraud, and are, therefore, precluded from the benefit of their infancy. Whilst infants are protected against contracts, other than for necessaries, it is undoubtedly true that they are liable for torts and injuries, infancy being a shield and not a sword, it does not afford a shelter for fraudulent acts. If the infant disaffirm an executed contract, and the specific consideration can be restored, in whole or in part, the infant is treated as a trustee of the other party, and must give it up; but where the articles received by him are consumed or the money spent, the party advancing them is without remedy.

"In actions *ex debito* arising from wrongs, as trespass, or assault, or constructive torts, or frauds, infants are liable; but the fraudulent act, to charge them, must be wholly tortious, for if *ex contractu,* though fraudulent, it cannot be changed into a tort to make them answer in trover or case. If the infant, without any contract, willfully takes away the goods of another, trover lies, because it is a fraudulent trespass.

"Where he affirms himself to be of age, and borrows money, and gives his obligation for it, and avoids it by reason of his nonage, no action lies against him for the deceit, because, though liable for actual torts or trespass, etc., which are *vi et armis,* yet he is not bound for the action sounding in deceit."

It would be useless to multiply such excerpts. The cases cited are fairly representative of the divergence of judicial opinion as to the liability of an infant for fraud in inducing the execution of a contract which he afterwards disaffirms. As the specific question has not been determined in this jurisdiction, we are confronted with the necessity of deciding, as suggested, which of the two opposing doctrines is the more nearly in accord with the general law of infancy and the former decisions of this Court.

It should be noted particularly that the plaintiffs filed two complaints. In the first they set up the execution of the note and mortgage, the defendant's default in payment, the seizure and sale of the truck, and the balance due, and sought to recover the amount of such balance and to be declared entitled to the possession of the truck. In the amended complaint they inserted an allegation of deceit and prayed judgment for the exact amount of the indebtedness as "damages" for the fraud. In other words, they brought suit to recover judgment for $1,308 as the remainder "due and owing on the note and mortgage," and then, discovering that they could not sustain this action on the note, amended the complaint by setting up a tort and praying the recovery of the identical amount which they call "damages." Yet it is said in behalf of the defendants that this action is based on the tort of deceit, and that the measure of damages is different from what it is in an action founded on contract. If this is correct, why did the plaintiff demand judgment for $1,308 first in contract and then in tort? The answer is obvious. The alleged deceit *per se* was not actionable; it was necessary to show loss, and loss could be shown only by proving a breach of the contract; the breach, therefore, was the direct cause of the loss, even if the deceit induced the execution of the contract. Stripped of disguise, then, the manifest purpose of the action is to collect the unpaid balance of the note by transforming an action on contract into an action in tort. Only this and nothing more. But such transformation this Court has declined to permit. In *Barnes v. Harris,* 44 N. C., 16, *Nash, C. J.,* observed that although an infant cannot be sued upon his contract, except for necessaries, and is liable in damages for a mere tort, a person cannot merely by changing his form of action charge him for a breach of contract. See, also, *Poe v. Horne, ibid.,* 398. And in *Scott v. Battle,* 85 N. C., 191, *Judge Ruffin* remarked: "Upon principle, too, it seems impossible to conceive that the law will ever permit that to be done indirectly which it forbids to be done directly." *Chief Justice Gibson* was equally emphatic in disapproving this tendency. His language is this: "The theory on which a breach of contract has been thus turned into a trespass is as incomprehensible to me as the theory on which a common recovery bars an entail; and why we should employ any juggle whatever to tear from an infant the

defenses with which the law has covered his weakness is equally incomprehensible. In the American courts the hardship of particular cases, as in the earlier decisions on the statute of limitations, seems to have run away with the law; but it is to be remembered that particular hardships are to be borne in giving effect to every general principal of policy. To fritter away the rule by exceptions such as these would expose a child of the most tender years to an action for the destruction of a delicate or dangerous instrument thoughtlessly or wickedly put into his hands; for, in contemplation of law, an infant of three years is not inferior in discretion to one of twenty. The mischiefs to which minors are exposed from the cupidity of those whose trade it is to pamper their appetites, are sufficiently depicted in *Penrose v. Curren;* and we are not disposed to surrender the principle asserted in it." *Wilt v. Welsh,* 6 Watts (Pa.), p. 13.

The necessary deduction is that the defendant's alleged deceit is not an estoppel against his disaffirmance of the contract. The principle is stated by *Avery, J.,* in *Loan Association v. Black, supra:* "We have discussed the exceptions upon the theory that the plaintiff set up the fraud in pleadings by way of estoppel, though there seems to be some dispute as to whether the amendment to the replication relating to the infancy of the *feme* defendant was ever allowed by the court. The plaintiff contends that, apart from the effect of coverture upon the validity of her promises and deeds, the female defendant was estopped as an infant from avoiding and repudiating the obligation of those instruments because she misled the plaintiff by the representation that she was twenty-one years old. It is a principle as old as the common law that agreements or attempted contracts of infants are voidable at the option of the infant on attaining his majority. It is expressly found here that there was no ratification, if such a thing had been possible where the double disability existed. But it is insisted that because she obtained money by false representations as to her age she was estopped from denying her obligation to pay. If the courts should sanction this doctrine, the result would be that the ancient rule, established as a safeguard to protect infants from the wiles of designing rascals, would be abrogated, and the way opened up to reckless youths to evade the law by lying. The courts would thereby put a premium upon falsehood and hold out the temptation to infants, and to others who hope to profit by debauching them, to resort to this disreputable method of enabling the one to squander and the other to extort the patrimony intended to prepare a child for future usefulness."

The defendant's disaffirmance rendered the contract absolutely void, and he is neither required to account for the use of the truck nor prevented from recovering the amount he has paid on the note and mort-

gage. Of course, he cannot retain any property acquired by the contract, but the truck has been sold and the proceeds retained by the plaintiffs. *Skinner v. Maxwell, supra; Devries v. Summit, supra; Hodge v. Powell,* 96 N. C., 70; *Walker v. Brooks,* 99 N. C., 207; *Draper v. Allen,* 114 N. C., 50; *Millsaps v. Estes,* 137 N. C., 545; *Englebert v. Pritchett,* 26 L. R. A. (Neb.), 177, and note; *Wuller v. Grocery Co.,* 16 Ann. Cas. (Ill.), 522, and note; *Gillis v. Goodwin,* 180 Mass., 140.

We have not overlooked the argument as to the effect of the defendant's disaffirmance of his contract, but the loss suffered by the plaintiff will not justify our disregard of established principles in the law of contract. Transactions founded in the utmost good faith often go awry and result in financial loss; but in the disposition of such questions we should remember the homely but forceful aphorism that "the hard cases are the quicksands of the law." We find no error in his Honor's judgment.

Affirmed.

STACY, J., dissenting: I recognize the force of the argument that the dominant purpose of the law in permitting infants to disaffirm their contracts is to protect children and those of tender years from their own improvidence, or want of discretion, and from the wiles of designing men. But when this right is used to relieve minors from their liability for torts and deliberate wrongs, the very protection which was intended as a shield to them becomes a sword in their hands. Jealous as the law may be of the rights of infants, it seems to me that in the case at bar this solicitude has reached the stage of "a vaulting ambition which o'erleaps itself and falls on t'other side."

Fraud will vitiate any contract at the election of the party defrauded. *Van Gilder v. Bullen,* 159 N. C., 291. Here the plaintiff has elected to rescind the contract and to treat it as a nullity. With the agreement out of the way, what is to bar the plaintiff from proceeding in an action *ex delicto?* The suit is not to enforce the contract; it is alleged that there is none. The action is based upon the tort of deceit. The measure of damages is different from what it would be in an action founded on contract. The plaintiff is not entitled to recover the purchase price of the machine or the balance due under the contract, for the infant may have agreed to pay too much. The plaintiff is limited in its recovery to what it has actually lost. *Burley v. Russell,* 10 N. H., 184; 34 Am. Dec., 146. See, also, *Food Co. v. Elliott,* 151 N. C., 396. This is not undertaking to do by indirection what the law forbids from being done directly. There is no effort to enforce the contract, but the plaintiff's suit is to recover damages in an action sounding in tort. See note, 57 L. R. A., p. 675.

· The authorities elsewhere are in hopeless conflict. They are fairly marshaled in the opinion of the Court. I am content to place my dissent · upon the reasons there assigned, and upon the additional reasons which have just been given. Without regard to the weight of authority—which seems to be in doubt—I hold it to be a sound principle of law, certainly approved in morals, that an infant who obtains my property by deceit injures me no less than the infant who negligently destroys that which is mine. If he be liable in the latter case, where the heart is free from guilt, why should he not be required to answer in the former, where forsooth his moral turpitude makes the injury more reprehensible on his part if not more grievous to me? The absence of a contract in the one case and its existence in the other is not a sufficient reason for the difference. *Wallace v. Morss,* 5 Hill, 391. A contract induced by fraud may be rescinded and treated as a nullity by the injured party; and, where this is done, it no longer exists as a shield for the infant defendant. The plaintiff should not be deprived of the right to rescind a fraudulent contract and sue for damages simply because the one who practiced the fraud is a minor. This would not be making the contract the substantial basis of the action, but it would be in fact a distinct rescission of the contract and an election to sue in tort.

*Daly, F. J.,* in *Eckstein v. Frank,* 1 Daly, 334 (citing in support authorities from New Hampshire, Massachusetts, Vermont, United States Supreme Court, Texas, South Carolina, and Maine), states the law of New York as follows: "When an infant obtains property by falsely representing himself to be of full age, an action of tort may be maintained against him, either to recover it back or to recover damages, upon the ground that he obtained the possession of it wrongfully. It has long been the rule in courts of equity that an infant will be held liable where he obtains property by a false representation respecting his age. 'If an infant is old and cunning enough,' says *Lord Chancellor Cowper,* 'to contrive and carry out a fraud, he ought to make satisfaction for it' (2 Eq. Ca. Ab., 515), and the good sense and justice of requiring him to do so has been held in the numerous cases cited to be as applicable in a court of law as in a court of equity."

The decision in *Loan Assn. v. Black,* 119 N. C., 323, is not at variance with this position, for there the suit was brought to recover on contract.

CLARK, C. J., concurs in dissent.