Mr. Chie( Justice Sharkey
delivered the opinion of the court.
This bill was filed by Battle to prevent distribution of the estate of Fort, and to obtain satisfaction of an amount alleged to be due him from the estate.
Fort died in 1835, and Battle became the administrator. Pie received the proceeds of the crop of cotton of that year, and continued to cultivate the plantation of Fort until 1840, as the best means of administering the same, as it is said, for those concerned. It is alleged that he was advised to pursue this course by the widow, and by the judge of probate, though no order of court was made to that effect. In the year 1840, Ford intermarried with one of the distributees, and after that time took charge of the management of the estate, which is alleged to have been done at the instance of the widow. Battle, although still continuing to be the administrator, yielded to this arrangement, and, it would seem, abandoned all further charge of the estate.
The amount which he now claims accrued to him in the course of his administration, and was settled in the following manner : At June term, 1841, the distributees obtained an order that Battle might be cited to come forward and settle his administration accounts, which was issued. Battle obtained time to make his settlement, and the matter was continued from term to term until July, 1841, when commissioners were appointed to examine and restate his accounts, though it would seem they *136 never acted on the' subject, or if they did, their account is not made a matter of record. At December term, 1842, it appears that a petition to have the matters in dispute determined on plenary proceedings was filed, and Battle was ordered to answer the bill. This bill is not in the record, nor does it appear how it was disposed of.
At this point the allegations of the bill, and the admissions of the answer aud the proofs, show that the disputed accounts of the administrator were submitted to arbitration, under an agreement signed by Battle and by Mrs. Fort, for herself and as guardian ad litem of her minor children, asd by Ford for himself and wife; which agreement was destroyed by the parties when the award was made up. The arbitrators stated the accounts of the administrator, and struck a balance in his favor of $5292.95, and awarded that the estate of Fort was liable to him for that amount.
Ford and his'wife Frances, and Priscilla Fort, appended to the award a writing under seal, by which they agreed to the award, and released Battle, as far as they were authorized to do, from all liabilities as administrator. Battle also signed a writing under seal, approving the award. All this occurred on the,2d of March, 1843.
At March term, 1843, this entry seems to have been made on the records of the probate court, to wit: “Ordered that the final account of O. D. Battle, administrator of the estate of Jos. A. Fort, deceased, be filed and recorded,” and immediately following is the account stated by the arbitrators. The award follows the account,, as part of the record of the probate court, as do also the approval of the parties, and immediately following is this indorsement, to wit: “ Examined, audited and reported, 30th March, 1843,” which is signed by the probate judge, and the clerk seems to have made and signed this memorandum, “Filed 30th March, 1843.” About this time, probably at the same term of the court, Battle resigned his letters of administration, and Clark was appointed administrator de bonis non; and he being about to make distribution of the estate, this bill was filed to prevent it in February, 1844, to enforce the payment out of the estate of the sum awarded.
*137 If this sum was really due to Battle, as administrator, he had 'a right to retain it; but having failed to do so before he resigned his letters, he must occupy the place of a creditor of the estate. The jurisdiction of the chancery court to enforce the payment of the award, has not been challenged, either on demurrer or in the argument, and we are not disposed to raise the objection.
A few remarks will dispose of the award. The distributees were the parties interested in the estate. The administrator'was trustee for their benefit, and however illegal his course of administration may have been, it was competent for them to waive every advantage which the law may have given them. They could ratify his acts, if they chose to do so, and this would be the necessary effect of submitting the matter to arbitration, and approving the award when made. It is certainly competent for distributees to settle with an administrator, if they can agree upon terms, and when they have so settled and discharged him, their complaint cannot afterwards be heard. The award, then, if valid in itself, was conclusive on the parties who were capable of binding themselves, either by the submission, or by approving the award. As to Mrs. Fort, she was bound, because she was capable of making a valid contract. But as guardiau ad litem, she was not capable of binding her wards. A guardian ad litem must conduct the suit under the directions of the court. 2 Paige, R. 304.
In the next place, Ford could not bind his wife by the submission. A husband may submit to arbitration any thing that he could dispose of in right of his wife, but as respects property which he cannot alien, he cannot submit to an award which would give that property to another. Kyd on Awards,- 27, 28. By our law, a married woman cannot incumber her property, except it be done with the proper ceremony. The approval, therefore, of Mrs. Ford was not binding on her.
The answer of Mrs. Fort and of Ford are made cross-bills, in which they pray that the award may be set aside, on the ground that the administrator acted illegally in carrying on the farm, and also because his accounts are incorrect. They were both fully informed as to the fact that he had continued the farming *138 operations. They could only have been mistaken as to his legal right to do so, and that objection they had a right to waive, and did do so by the submission. It is not made to appear that the arbitrators acted under mistake either of law or of fact, or that their conduct was such in any respect as to vitiate the award. It is alleged in the cross-bill by Mrs. Fort and by Ford, that they were not informed as to the clause in the ratification of the award, which approved the course of administration pursued by Battle, but this is positively disproved by Harney and Lawrence, both of whom testify that the'award and ratification were both read over before they were signed, and fully approved. Indeed, the witnesses say that all parties seemed to be gratified at the terms of the award. The charges in the cross-bill are, therefore, not sustained. The consequence is that the award is binding, both as to Mrs. Fort and Ford, as far as they were made liable by the award. Perhaps Ford was not bound at all, as he had no separate right to a distributive share of the estate, and Mrs. Fort was only bound in proportion to her share of the estate. It remains to inquire into the effect of the action of the probate court on the account as stated by the arbitrators. An account so stated might very well constitute the final account of the administrator, and, ifj properly sanctioned by the court, would be final.
It seems the account was presented to the court, for it .is so stated, as we have shown, on the record. There was, it is true, no formal judgment entered; still, in this respect, the entry may be sufficient, on the authority of Gildart's Heirs v. Starke,, 1 How. 450; and Griffith's Adm'r v. Vertner & Wife, 5 lb. 736.
A difficulty of a very serious character, however, presents itself in regard to this judgment. The orders and decrees of the probate courts, like the judgments of other courts, are conclusive; but, like other courts, they must have jurisdiction of the subject-matter and of the person, otherwise their judgments are not conclusive. See the cases above cited. In this instance, the court had jurisdiction of the subject-matter, but not of the persons. When the probate court allows the final account of an *139 administrator, it amounts to a judgment in his favor. In this, the bill alleges that the account was'approved by the judge of probate, but it does not aver that this allowance was made in the manner pointed out by'law. The statute is very plain, as it now stands; it requires that when a final account is to be allowed, the court shall cause citations to be served upon all the parties, if they reside in the county, and if not, they are cited by publication. At the time this settlement was made, it required forty days’ notice of- the intention to settle the account, by posting up notices at three public places, or by publication in a newspaper, due proof of which was to be made to the court. Hutch. Code, 663, 682. The notice is not averred in the bill, or shown by the record, nor does it appear that the parties were present. The answer denies the validity of the adjudication. The case of Washburn v. Phillips, 5 S. & M, 600, decides that a settlement made by an administrator, without the requisite notice, would be void, and the case of Jones v. Coon et al., lb. 751, is to the same effect.
The bill, in truth, does not set up and rely on the account as a final settlement of the estate regularly made, but it reliés upon the award. It is alleged that Mrs. Fort, by the appointment of the court, represented her wards through the whole course of arbitration, and that by her ratification they became bound. Still, if the proper steps had been taken, the account made out by the^arbitrators might have been adopted and approved as the final account of the administrator. If the final settlement had taken place, at the instance of the distributees, under the proceedings first adopted by them in citing the administrator to make his settlement, or on the report of the auditors appointed by the court, perhaps it would have been sufficient, on the ground that the parties were in court. But the matter was withdrawn from the court, and submitted to arbitration. The account subsequently presented, became a new and independent proceeding, and the requisite notice became necessary before it could be final. The record of the probate court does not show notice, or any thing from which it may be inferred that notice was given. Indeed, the testimony of Johnston, the probate *140 judge, leads to the inference that notice was not given. The Want of the requisite notice must deprive the adjudication on the account of its binding force, the notice being the process by which parties are brought in.
The decree must be reversed, and the cause remanded. The injunction was improperly granted, and must be dissolved. The estate had been in a course of administration for several years, and distributees are entitled to distribution after one year. Murdock v. Washburn, 1 S. & M. 546; Berry v. Parkes, 3 lb. 625.