## COMPROMISE SETTLEMENT WITH AN INFANT.

### Superior Court of Cincinnati.

PAUL CAINE, A MINOR, BY MARY J. CAVANAUGH, HIS NEXT
FRIEND, v. THE VICTOR LAMP COMPANY.

### Decided, June 14, 1913.

*Infant—Legal Sanction to Compromise Settlement Made With Next
Friend Not Binding Upon Infant, When—Pro Forma Judgment
Vacated.*

A judgment by confession entered in the court of a justice of the peace
to carry into effect a compromise and settlement made on behalf
of an infant by his next friend is not binding upon the infant
when there has been no hearing of the case by the justice of the
peace, and the only purpose of the judgment is to give an apparent
legal sanction to the compromise.

*Cowell & Lamping,* for plaintiff.
*Galvin & Galvin,* contra.

OPPENHEIMER, J.

This case appears to be one of first impression in this state,
and we have therefore endeavored to give it the consideration
which its importance demands, realizing that a decree contrary
to defendant's contentions will in all probability affect numer-
ous cases of a similar nature.

On October 25, 1911, plaintiff lost two fingers of his left hand
while at work upon a punch press in the factory operated by
defendant in this city. At that time he was sixteen years and
one month old. He lived with Mary J. Cavanaugh, an aged
woman, by whom he had been taken from an orphan asylum
and adopted at the age of three and a half years, and who, al-
though not related to him, was known generally as his aunt.
At the time of his injury plaintiff was earning $8.25 per week,
and for a period of two weeks thereafter he was voluntarily
paid $5 per week by defendant while incapacitated from work.
It was then suggested by defendant's book-keeper that he bring

his aunt to defendant's office in order that they might talk over the matter of settlement. He did so, and after some negotiation the aunt agreed to accept the sum of $60 in full of all claims, upon defendant's promise to put plaintiff back to work and to pay the sum of $30 to the physician who attended him. There is some conflict of testimony at this point, the aunt contending that defendant agreed to give plaintiff permanent employment, while the witnesses for defendant contend that the promise was merely to continue him in its employment so long as his work was satisfactory. Plaintiff and Miss Cavanaugh were then sent to the office of the attorney who represented the liability company which insured defendant against loss by reason of injury to its employes, with a request that he carry into effect the settlement upon which they had agreed. Accordingly this attorney prepared a bill of particulars on behalf of plaintiff, by Mary J. Cavanaugh, his next friend, against defendant, asking for the sum of $90 as damages, which bill of particulars was filed in the court of Michael Muller, a justice of the peace in and for Cincinnati township, Hamilton county, Ohio; and at the same time he prepared a confession of judgment on behalf of the defendant. The bill of particulars was verified by his next friend, and judgment by confession entered thereon by the magistrate, who heard no evidence and merely carried into effect the arrangment made between Miss Cavanaugh and the attorney for the liability company.

Plaintiff now seeks to set aside the judgment rendered in the magistrate's court, so that he may be restored to his original position, alleging that neither he nor the next friend were represented by counsel, that through mistake and negligence the suit was not filed in the proper court, nor for the proper amount, and that the matter was not properly presented to the court; and that neither he nor the next friend was advised as to his rights.

In the course of the hearing evidence was introduced tending to show that there had been a breach of the alleged agreement to give plaintiff employment, but, as we then indicated, we are of opinion that this position is not well taken. Even if such

agreement had been made, a breach thereof would give plaintiff merely a right of action for damages for breach of contract, and would not entitle him to have the original agreement set aside by a decree in equity. We further indicated that we were then of opinion that there was no such mistake as would in equity entitle plaintiff to the relief prayed for; but we took under advisement the question of the binding effect of the judgment rendered by the magistrate without any judicial inquiry as to the merits of plaintiff's claim, and the propriety of the settlement made in plaintiff's behalf.

After a careful investigation of such authorities as have been brought to our attention by counsel for plaintiff, and of such other cases as we are able to find, we are of opinion that plaintiff's position is well taken and that the relief prayed for should be granted.

There can be no doubt of the jurisdiction of the justice of the peace so far as the parties, the cause of action, and the amount claimed in the bill of particulars are concerned. Under Section 10226 of the General Code a justice of the peace has. exclusive jurisdiction in civil actions for the recovery of sums not exceeding $100. It is also apparent that suit was properly instituted by the next friend. General Code, Section 11247.

It is therefore clear that the judgment of the magistrate was valid, and that it is binding upon all parties until set aside in a proper action brought for that purpose.

An infant is always a favorite litigant. It is the right and duty of a court to protect his interests, whether he be a plaintiff or defendant, and to exercise general supervision over those who represent him. In theory he has no right to bring an action in his own behalf, and therefore it was formerly the practice for the person who intended to act for him to go before a judge at chambers, or to present a petition in his behalf, stating the nature of the action, and praying that because of the infancy of the real party in interest, the applicant might be appointed as the next friend (*prochein ami*) of such infant, with power to institute suit in his behalf. A rule was then made by the judge in accordance with the prayer of the petition, and the

applicant was thus legally authorized to institute the necessary proceedings. This practice has now fallen into disuse, and when suit is filed on behalf of an infant by one claiming to act as next friend, it is conclusively presumed that the necessary order has been made and no further authority is required. However, the statute (General Code, Section 11247) still authorizes the court to dismiss the action brought by the next friend, if it is apparently not for the benefit of the infant, or to substitute another as next friend if the interests of the infant are apparently not properly conserved.

The infant and not the next friend is the real plaintiff, and the jurisdiction of the court will depend upon the citizenship of the infant and not upon that of the next friend (*Burkham* v. *Cooper*, 2 C. C., 77; *Furste* v. *Lithographing Company* 13 C.C. [N.S.], 536; *Voss* v. *Neineber*, 68 Fed., 947). In brief, the office of the next friend is solely to bring the infant into court because of his legal inability to present his own case, and the next friend is neither an attorney nor a guardian, and is without the powers of such legal representatives (*Massie* v. *Long*, 2 Ohio, 287). The duties and powers of the next friend are similar to those of a guardian *ad litem*, designated by the court to represent an infant who is a party defendant. He is required to acquaint himself with the rights, both legal and equitable, of the infant whom he represents, and to take all necessary steps to defend and protect them, and to see to it that the court is advised as to all matters which involve the rights of the infant (*22 Cyc.*, 662, and cases cited). As heretofore indicated, the court will not merely protect the rights of the infant, but will supervise the actions of the next friend, will dismiss or arrest the progress of the suit commenced by him if it appears to be for the benefit of the infant to do so, and will substitute another as next friend if such course appears to be advisable. *22 Cyc.*, 632, and cases cited. The next friend can do nothing which may injure the rights of the infant, and therefore can not release or compromise a suit instituted in his behalf (*Isaacs* v. *Boyd*, 5 Port. [Ala.], 388; *Rankin* v. *Schofield*, 70 Ark., 83; *Johnson* v. *McCann*, 61 Ill. App., 110). The next friend can

not even bind the minor by submitting his claim to arbitration, even though such arbitration be. made the rule of court (*Fort v. Battle,* 21 Miss., 133; *Tucker* v. *Dabbs,* 12 Heisk. [Tenn.], 18; *Fletcher* v. *Parker,* 53 W. Va., 422; *Millsaps* v. *Estes,* 137 N. C., 535). Indeed, he can waive no rights of the minor whom he represents, but is in all respects to prosecute or defend as vigorously as possible. His admissions do not bind the plaintiff, and the plaintiff is not concluded by any illegal or improper act of the next friend. See monographic note to *Fletcher* v. *Parker,* supra, in 97 Amer. State Rep., 995, et seq.

In the case of *Railroad Company* v. *Hayes,* 97 Ala., 201, it appears that suit had been instituted by a minor, by his next friend, for personal injuries caused by defendant's negligence. Defendant, among other things, pleaded a former recovery by plaintiff in a suit instituted by his father as next friend, wherein a compromise and settlement had been made and judgment entered in accordance with such settlement. The lower court charged the jury, among other things, as follows:

"Now, that is the law as to the powers of next friend. He has no more interest in the recovery than a stranger. He has no power over the cause of action. He has no power without authority of court, to compromise or settle the cause of action in any way whatever. He could not enter into an agreement with the defendant that would bind the minor. * * * It is manifest that this plaintiff, Randall Hayes (the father), had no right to make any agreement with defendant for the payment of * * * any sum of money, and such arrangement as that * * * is a mere nullity; * * * and the only way in which such an arrangement can become possessed of any validity would be by the ratification of it by a court of competent jurisdiction that has all the facts before it. * * * Such a transaction as that, unless the court was fully informed of all the material facts of the transaction, so that the court could have instituted an investigation, and determine whether or not it was for the benefit of the minor that such settlement be carried out, was of no validity; that a judgment rendered on such agreement would be null and void, unless the court was informed of the material facts, because the next friend had no right to enter into a compromise of that kind by which the rights of the minor would be concluded."

· This charge was fully approved by the Supreme Court, which said (page 209):

"That the court correctly declared the law in this connection, we do not doubt: * * * In theory a *prochein ami* is an officer of the court in which a minor sues by him. His only functions are to put his capacity to sue in the place of the infant's incapacity, and thus to set the machinery of justice in motion. * * * The character of the necessity for his appearance marks the limitations of his powers. The minor can not get before the court without him, the jurisdiction of the court to hear and determine the cause of action can only be invoked by him, and it is therefore necessary that he should appear. * * * The next friend has no interest in the result of the proceeding. It is of no consequence to him whether a recovery be had or not, nor whether the amount of recovery be great or small. His being an officer of the court is a basis for the court's powers over him in the litigation, * * * he can not release the cause of action, nor compromise it, nor submit it to an arbitration, the result of which will bind the infant. And being without power to compromise the cause of action, and the court having the power and being charged with the duty of controlling the suit to the protection of the infant's interest, an attempted compromise can not have force and validity injected into it by his mere consent to a judgment for the amount he has assumed to agree to receive in settlement of the cause of action. His mere consent is nugatory. * * * The court may upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment for the amount so attempted to be agreed upon, but this is not because of the agreement at all—that should exert no influence—but because it appears from the evidence that the amount is just and fair, and a judgment therefor will be conservative of the minor's interests."

. In the case of *Evans* v. *Davies*, 39 Ark., 235, the court says (page 237):

"The rights of infants can in no case be judicially affected, except upon proper issues and proof, * * * and ought not to be upon their own application by next friend or guardian, without reference to the master or the chancellor's own careful examination, to ascertain whether or not the thing asked be really for the benefit of the infant."

In *Claxton* v. *Claxton*, 56 Mich., 557, the court, speaking

through that excellent jurist, Chief Justice Cooley, says (page 558):

"When the rights of infants are in question, the facts can not be established by admissions, and judgment must not pass as of course, but the facts must be proved, and the court, on an examination of them, must determine for itself what the interest of the infant demands."

In the case of *Ferrell* v. *Broadway,* 126 N. C., 258, which was heard upon a motion to set aside a judgment rendered in a case wherein an infant appeared by his next friend, the court says (pages 260-261):

"We are not intimating, by making this order to remand the case, that a next friend of the infants can not agree to a consent decree or judgment in a case where all the facts are developed and found by the court, and an order made that the arrangement would be best for the interest of the infants.   *   * * But it may be taken to be the law that, in a case where the issues are joined between infants on one side and the adverse party, and no evidence is introduced, and nothing is done or said on the trial except that an agreement is entered into by the next friend or counsel of the infants, that the verdict shall be rendered against the infant, the verdict and judgment will not bind the infants.   In such a case, the court would have no knowledge of the facts, and therefore could not exercise any supervision over the interest of the infants.   The object in having a next friend appointed for infants is to have their rights and interests claimed and protected, and the next friend or their counsel will not be permitted to yield their rights to others by a consent verdict and judgment where the court has exercised no supervision over the arrangement."

This case was subsequently reversed by a divided court (*Ferrell* v. *Broadway,* 127 N. C., 404), but on grounds which did not affect the principle here stated.

In the case of *Railway Company* v. *Elder,* 149 Ill., 173, the eighth syllabus reads:

"Where a judgment is rendered by the court, in favor of an infant, against a railway company, without hearing any evidence, but by consent of the child's father, and the attorney appearing for the plaintiff was the defendant's counsel, the court will properly vacate the judgment and hear the case on the merits."

The court says (page 181):

"Here the court had rendered a judgment without hearing the evidence or fully understanding the merits of the case, in a case where the rights of an infant were involved, the attorney appearing for and representing the infant having been employed at the instance of the opposing party. When these and other facts of a kindred character were brought to the attention of the court on motion to vacate the judgment, the court, in the exercise of a sound discretion, could do no less than vacate the judgment which had been improvidently entered, and allow the cause of the minor to be fully and fairly presented to the court."

In the case of *Railway Company* v. *Lasca*, 79 Kansas, 311, the syllabus is as follows:

"1. A parent has no implied authority to compromise or settle the claim or cause of action of his infant child or to consent that a judgment may be rendered against him.

"2. When acting as next friend for his infant child a parent who has been regularly made a party to an action may properly negotiate for an adjustment of the controversy. He can not, however, bind the infant by such settlement, which can only become effective by due judicial examination and adjudication.

"3. Where the proceedings in court are merely formal, and are instituted and carried on only to give an apparent sanction to the settlement, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, a judgment entered in pursuance of the agreement and by consent merely is only colorable and will be set aside in a proper proceeding when its effect, if allowed to stand, would be to bar the infant's substantial rights."

This action was a suit to set aside a judgment entered against defendant in favor of the parents and next friends of a minor for the sum of $95 for personal injuries sustained by the minor through the defendant's negligence. The parents had agreed to the settlement, as did the next friend in the case at bar, and at the suggestion of defendant went to the office of its attorneys, who prepared the necessary pleadings and filed the suit. They then appeared before a judge who inquired whether the settlement was satisfactory, informed them that a judgment would

bar the claims of all parties for further damages, and there-upon entered judgment by consent for the amount which had been agreed upon. The next friends receipted the journal docket, as did the next friend in the case at bar, and a finding was put on the journal that the parents had been fully informed as to all facts and that no fraud had been committed. Indeed the case is in all respects identical with the case at bar. The court, in an elaborate opinion, says (pages 316-7) :

"A parent has no implied authority to compromise or settle a minor's cause of action. Nor has a parent authority to consent that a judgment be rendered against his infant child, and when admitted to prosecute or defend as a next friend or gardian *ad litem* he cannot by admissions or stipulations surrender the substantial rights of the infant. The next friend, being entrusted with the rights of the infant, so far as they are involved in the cause, and acting under responsibility to the court and to the infant, may negotiate for a fair adjustment of the controversy. He may not, however, bind the infant by such settlement; it can only become effective when given due judicial sanction, and this must be upon a real and not perfunctory hearing. The attempted compromise does not become effective by the consent of the next friend, but by the judgment of the court, acting upon the facts judicially ascertained."

And again (on page 319) :

"Where a compromise is fairly incidental to an action regularly brought, and is upon due judicial examination approved, the judgment if not otherwise impeached may be conclusive, as in the case of adults; but where the proceedings in court are merely formal and instituted and carried on only to give an apparent sanction to the agreement, and there is no judicial investigation of the facts upon which the right of extent of the recovery is based, the judgment so entered by consent is only colorable, and must be set aside in a proper proceeding when its effect, if allowed to stand, would be to bar the infant's rights. In such case the proceeding in court should be regarded as but formal and as intended solely to employ the functions and powers of the Court to give validity to the prior agreement."

In the case of *Rankin* v. *Schofield*, 70 Ark., 83, heretofore cited, the court says (page 87) :

"The recitals of the record show affirmatively that the chancellor performed no judicial act of investigation into the merits of the controversy before entering the decree. On the contrary, that was purposely avoided, out of considerations of mere expediency, * * * as an amicable settlement and adjustment of a family affair. Such added dignity to the compromise of the guardian did not make it any the less his compromise. On the face of such a record we cannot indulge the maxim, 'omnia praesumuntur rite et solemniter esse acta.'"

In the case of *Kingsbury* v. *Buckner*, 134 U. S., 650, at 680, the court, speaking through Mr. Justice Harlin, says:

"It is undoubtly the rule in Illinois as elsewhere, that a next friend or guardian *ad litem*, can not, by admissions or stipulations, surrender the rights of the infant. The court, whose duty, it is to protect the interests of the infant, should see to it that they are not bargained away, by those assuming, or appointed, to represent him."

This principle is recognized as a general rule of law in 14 *Encyclopedia of Pleading & Practice*, page 1054, where it is said:

"Where infants sue by their next friend, they are as much bound by the judgment or decree as if they had been adults, except, perhaps, where the next friend fails through collusion, neglect, or mistake to lay the case properly before the court, in which case a new suit may be brought."

In the case at bar there is no conflict in the testimony concerning what transpired in the office of the Justice of the Peace, who entered the judgment which the plaintiff now seeks to set aside. The counsel for the liability company, which protected the defendant, had prepared the necessary bill of particulars and confession of judgment. He went in company with plaintiff and Miss Cavanaugh to the office of the justice of the peace, where Miss Cavanaugh signed and swore to the bill of particulars before the clerk of that court. The docket was then prepared, and a satisfaction of judgment signed upon the docket by Miss Cavanaugh. It appears that the justice of the peace was not then in his office, but that he came in a little later and upon the representation of the attorney that all matters in dispute had been

amicably adjusted, he made the judgment entry.  The justice
of the peace testifies that he heard no evidence and that he does
not recall that either plaintiff or Miss Cavanaugh was present
when the judgment was made, but that he recalls that the at-
torney was present.  It is clear, therefore, that the court did not
attempt to learn the facts and determine whether plaintiff had
been properly represented or properly protected.  In such
condition of affairs to sustain the judgment of the justice of the
peace would be to deprive the infant of that protection with
which the law seeks to surround him.

It remains for us to determine whether this court has jurisdic-
tion to enter the decree for which plaintiff prays in view of the
fact that the justice of the peace had jurisdiction, and that his
judgment is therefore presumably valid.  It is clear that there is
no possible way of reviewing the case in the court of the justice
of the peace.  The code gives him no power to review his judg-
ments, or to grant a motion for a new trial.  The time for appeal
has long since passed; indeed, it is doubtful whether there could
possibly be an appeal on behalf of plaintiff when the judgment
was entered for the full amount which was asked.

The apparent purpose of the judgment entered by the justice
of the peace in this case was to give legal sanction to the com-
promise and settlement which had been agreed upon by
plaintiff's next friend.  We have seen that the justice of the
peace had no legal right to enter such judgment except after due
examination and inquiry into the facts.  No such inquiry having
been made, the compromise was not binding upon the infant, and
the proper remedy, therefore, is to have this compromise set
aside.  Such proceeding could unquestionably be instituted in
the court of common pleas; and Section 1571 of the General Code
of Ohio gives this court jurisdiction similar to that of the court
of common pleas in such cases.

It may be proper to remark that the infant is not required to
wait until he has attained his majority before proceeding in
this manner.  He may, during infancy, maintain an original
suit for such relief, without asking for a re-hearing of the suit
in which the voidable judgment was entered.  *Johnson* v. *Buck*,

220 Ill., 226; *Teel* v. *Dunnihoo,* 221 Ill., 471; *Newland* v. *Gentry,* 18 B. Mon. (Ky.), 666.

Counsel for defendant has submitted a brief in which a number of cases are cited. We have carefully examined these cases, but they do not affect our judgment.

Much reliance is placed upon the case of *Tripp* v. *Gifford,* 155 Mass., 108, which is usually considered to be contrary to the opinion which we have heretofore expressed. As a matter of fact this case does not touch the question raised in the case at bar. The court held that a settlement of a claim for personal injuries made *out of court,* and *not approved by the court,* was not binding upon the infant. All reference to the validity of a judgment entry approving such settlement was distinctly *obiter.*

In the case of *Walsh* v. *Walsh,* 116 Mass., 377, the court holds that a compromise, *appearing to the court to be for the benefit of an infant,* and sanctioned by the court, can not be afterwards set aside except for fraud. It can not be said that the compromise in the case at bar appeared to the court to be for the benefit of the infant, when the court affirmatively admitted that he knew absolutely nothing concerning the facts.

Counsel for defendant especially refers us to the case of *Beliveau* v. *Amoskeag Mfg. Co.,* 68 N. H., 225. This case also does not touch the questions involved in the case at bar. The proceedings in court were entirely regular, and after judgment for the plaintiff, the amount of this judgment was paid by the defendant to counsel for the next friend of the infant plaintiff. Counsel subsequently appropriated the money thus paid to him to his own use and absconded, and plaintiff filed a motion to strike off the docket entry of satisfaction, and to re-open the case. The court properly held that a payment by defendant in good faith to the counsel of record operated as a discharge to defendant. As it has been frequently held that payment to the next friend is also proper this decision is not at all surprising. But it is interesting to note that Chief Justice Charles Doe, the most able member of the court, dissented from the judgment, while two other of the justices did not participate in the decision.

In *Sheldon's Lessee* v. *Newton*, 3 Ohio State, 494, cited by defendant, the court holds that. the judgment of a court of competent jurisdiction is binding when brought collaterally in question. In the case at bar the judgment of the justice of the peace is *directly,* not collaterally, attacked.

The decision in *Heirs of Ludlow* v. *Johnston*, 3 Ohio, 560, turned upon the admissibility of parol evidence to prove the contents of a court record when the record itself was in existence. This was purely a question of adjective law.

The case of *Ratcliff* v. *Teters*, 27 Ohio State, 83, did not involve an attempt to set aside a judgment or even to attack it collaterally, but solely to prove a necessary fact upon which a record was silent. The court held that such testimony was competent. Again the question was solely one of adjective law.

The case of *Cleveland Leader Printing Company* v. *Greene*, 52 Ohio State, 492, holds that a *nunc pro tunc* entry can not be made for the purpose of showing that a certain inquiry was made by the court, when in fact no such inquiry was ever made.

The case of *Cincinnati* v. *Hosea*, 10 O. C. D., 618, affirmed without report in 66 Ohio State, 637, holds merely that an adjudication by a court of competent jurisdiction concerning a matter in dispute is conclusive in a subsequent suit between the same parties and concerning the same subject matter. This is simply a declaration of the doctrine of *res adjudicata* as applied to an action at law.

The case of *Godfred* v. *Godfred*, 30 Ohio State, 53, involved an attempt to aid a record of proceedings before a justice of the peace by parol evidence of an essential fact upon which the record was silent. The court held that as to all matters which by law are required to be recorded the record could not be varied, amplified or contradicted by parol evidence. It is sufficient comment upon this case to say that it differs from the case at bar in that the law does not require that the record state that evidence was heard when the fact is otherwise.

Counsel for defendant lay much stress upon the fact that the record in the justice's court recites that "the court upon consideration of the pleadings *and evidence* finds that there is due

plaintiff the sum of $90 and for said sum renders judgment herein.''

In the case of *Railway Company* v. *Lasca, supra,* the record of the court in which the suit was originally brought was far more elaborate, reciting that ''the case came on for trial on its merits, all parties appearing as before, and the jury being waived and a trial being had before the court on the pleadings and proof, and the court being fully informed and advised, doth find the issues in favor of said plaintiff.'' A lengthy receipt was then signed by the next friends, the journal docket was receipted by them, and the court made an entry reciting that they had been ''fully informed as to all facts surrounding the injury to their child, and also all the facts concerning the settlement and the proceedings in Court at the time of the taking of the judgment, and no fraud was committed against them.'' Nevertheless the judgment was set aside as heretofore stated.

Indeed, it would seem to be rather strange if the justice of the peace could give validity to an otherwise voidable judgment by merely adding gratuitous statements to the record, when such statements are in fact false. It is undoubtedly customary to make such entries concerning the hearing of evidence as appear to have been made in the case at bar, but custom in this respect can not possibly create a rule of law which will deprive a minor of the protection which should be accorded him.

Accordingly it is our opinion that the judgment entered by the justice of the peace in the original suit was voidable; that it is proper for the infant to resort to a court of equity to set aside such judgment, and that this court has jurisdiction to hear and determine such case. The preliminary question bearing upon the duty of the infant to place defendant in *statu quo* by refunding the money received by his next friend has already been passed upon by Judge Hoffheimer, our predecessor, in *Caine* v. *Victor Lamp Company, ante,* p. 47.

We are not to be understood as passing upon the merits of plaintiff's claim for damages for personal injuries. For aught we know to be contrary, the compromise may have been decidedly advantageous to the infant. Contrariwise, he may have received

but a small part of that to which he was justly entitled. We have not presumed to ascertain the facts and pass upon this question. We merely decide that as the next friend had no legal right to compromise the case in this manner, the infant was not bound by her act, and that he therefore has a right to have the facts properly presented for adjudication.

Judgment and decree accordingly.